STATE of South Dakota, Plaintiff
and Appellee,

v.

Larry H. PACK, Defendant
and Appellant.

No. 18341.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1994.

Decided May 18, 1994.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Lester Nies of Richards, Hood, Brady & Nies, Spearfish, for defendant and appellant.

MILLER, Chief Justice.

Larry H. Pack pled guilty to two counts of rape, SDCL 22–22–1(5), a Class 3 felony with a maximum punishment of fifteen years' imprisonment and a $15,000 fine. The court ordered that Pack serve two consecutive fifteen-year terms, that upon release or parole he attend a sexual offender program and receive substance abuse counseling and that, upon his release from the program, a mental health counselor would determine whether he would be allowed to have contact with minor children.

On appeal, Pack claims his sentence is excessive and violates the Eighth Amendment to the United States Constitution and Article VI, § 23 of the South Dakota Constitution. We affirm.

## FACTS

Pack moved to South Dakota in September 1990, after the State of Wyoming began investigating him for sexual contact involving his middle stepdaughter, T.O.[1] His wife, S.O. (who is also the mother of the girls involved), and the children followed. Pack then began raping his youngest stepdaughter, thirteen-year-old J.O. He followed the same pattern he had established in his sexual predation of his oldest stepdaughter, P.O.[2] He would wait until his wife was at work, send the younger children out of the house and force J.O. into sex through threats of being beaten, abandoned by S.O., or grounded. Pack continued to rape J.O. twice a week for two years.

In October of 1992, due to reports of truancy and sexual abuse, the South Dakota Department of Social Services and the Lawrence County Sheriff interviewed J.O. and learned of Pack's activities. On October 23, 1992, a grand jury indicted Pack on twenty-six counts of rape of J.O. between September 1990 and October 1992.

On February 10, 1993, pursuant to a plea agreement, Pack signed a petition to enter a plea of nolo contendere to two of the charges. On March 9, 1993, he amended his plea to guilty. The remaining charges in the indictment—twenty-four additional counts of rape and a fugitive from justice complaint—were dismissed. In addition, the Lawrence County State's Attorney's Office agreed not to file a Part II Information against Pack, to bar subsequent prosecution of any uncharged incidents of rape between September 1990 and October 9, 1992, and to make the agreement contingent upon completion of a plea agreement between Pack and the State of Wyoming, which called for any Wyoming sentence to be served concurrently with the sentence imposed for the South Dakota charges. As noted earlier, the trial court sentenced him to two consecutive fifteen-year terms in prison.

Pack filed an appeal on April 30, 1993. On May 10, 1993, he requested that this court remand his appeal for the purpose of allowing a motion to the trial court seeking a hearing on the legality of his sentence. We granted the remand. The trial court conducted two motions hearings and entered an order upholding the legality of Pack's sentence. He appeals.

## ISSUE

WHETHER PACK'S SENTENCE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.

■ It is important to note that Pack's motion to this court for remand to the trial court to request hearing on his sentencing was to determine the *legality* of his sentence, not a request for Eighth Amendment review. Pack's thirty-year sentence is clearly within statutory limits for two counts of rape of a

---

1. The record shows T.O. was left behind in the custody of Wyoming officials after allegedly suffering physical abuse in retaliation for her refusal to consent to sex and perform fellatio on Pack.

2. Wyoming officials verified that Pack fathered a child by P.O. The record shows Pack began raping P.O. when she was twelve years old and did not stop until she left home at age eighteen. Pack forced P.O. to engage in fellatio and cunnilingus. He forced her to masturbate while he photographed her.

minor. SDCL 22–22–1;[3] SDCL 22–6–1.[4] Therefore, as the trial judge found, it is "not facially illegal." Nor does Pack allege any other circumstance under which we have found sentences to be illegal. *See State v. Tibbetts*, 333 N.W.2d 440 (S.D.1983) (finding denial of credit for presentence incarceration rendered sentence illegal); *State v. Ford*, 328 N.W.2d 263 (S.D.1982) (finding sentence illegally increased after oral pronouncement of sentence). Therefore, we apply the following standard of review:

> 'On appeal, we first determine whether the sentence "shocks the conscience" or is so disproportionate to the crime that it activates the Eighth Amendment "within and without jurisdiction" proportionality tests....' *State v. Lykken*, 484 N.W.2d 869, 879 (S.D.1992); *State v. Basker*, 468 N.W.2d 413, 418 (S.D.1991). *Accord State v. Andrews*, 393 N.W.2d 76, 82–83 (S.D. 1986); *Weiker II, [State v. Weiker]* 366 N.W.2d [823] at 827 [ (S.D.1985) ]. 'Absent a sentence which is so excessive in duration that it shocks the conscience of the court, it is well settled in South Dakota that a sentence within statutory limits is not reviewable on appeal.' *Lykken*, 484 N.W.2d at 879; *State v. Janssen*, 371 N.W.2d 353, 356 (S.D.1985) (citing cases). Stated alternatively, we will only engage in extensive review of a sentence where we have first determined the sentence was

manifestly disproportionate to the crime. *State v. Holloway*, 482 N.W.2d 306, 310–311 (S.D.1992); *Weiker II*, 366 N.W.2d at 827. 'If a sentence is manifestly disproportionate to the crime, [in light of the gravity of the offense and harshness of the penalty] .... then the other two factors listed in *Helm* [sentence imposed on others in the same jurisdiction and in other jurisdictions] become more focused and require extensive review.' *Weiker II*, 366 N.W.2d at 827. *See also [Solem v.] Helm*, 463 U.S. [277] at 292, 103 S.Ct. [3001] at 3011, 77 L.Ed.2d [637] at 650 [ (1983) ].

*State v. Castaneira*, 502 N.W.2d 112, 114–15 (S.D.1993) (quoting *State v. Gehrke*, 491 N.W.2d 421, 423 (S.D.1992)).[5]

■ The test to determine whether a sentence is so constitutionally offensive as to shock the conscience is two-fold. *State v. Shilvock–Havird*, 472 N.W.2d 773 (S.D.1991).

> First, is the punishment so excessive or so cruel 'as to meet the disapproval and condemnation of the conscience and reason of men generally.' And second, whether the punishment is so excessive or so cruel as to shock the collective conscience of this court.

*Id.* at 779.

When determining a fitting sentence, the sentencing court should " 'acquire a thorough acquaintance with the character and history of the man before it.' " *State v. Carsten*, 264

---

3. SDCL 22–22–1 provides in part:
   Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

   \* \* \* \* \* \*

   (5) If the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim;

   \* \* \* \* \* \*

   A violation of subdivision (5) or (6) of this section is rape in the third degree, which is a Class 3 felony.

4. SDCL 22–6–1 provides in part:
   Except as otherwise provided by law, felonies are divided into the following eight classes which are distinguished from each other by the respective maximum penalties hereinafter set forth which are authorized upon conviction:

   \* \* \* \* \* \*

   (5) Class 3 felony: fifteen years imprisonment in the state penitentiary. In addition, a fine of fifteen thousand dollars may be imposed;

   \* \* \* \* \* \*

Nothing in this section shall limit increased sentences for habitual criminals under §§ 22–7–7 and 22–7–8.

5. In *Bult v. Leapley*, 507 N.W.2d 325 (S.D.1993), we concluded a sentence was so shocking to this court that we found it unnecessary to engage in inter and intra jurisdictional analysis to find the sentence disproportionate. The proportionality review employed in *Bult* is limited to the unique facts and circumstances of that case. Moreover, as we noted in *Bult*, "[w]hether the Eighth Amendment even encompasses a proportionality principle in non-capital cases has been called into question by the United States Supreme Court." *Id.* at 328 n. 2 (citing *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)).

N.W.2d 707, 709 (S.D.1978) (quoting *United States v. Hendrix*, 505 F.2d 1233, 1235–36 (2d Cir.1974) *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975)); *State v. Murphy*, 506 N.W.2d 130 (S.D.1993). This study should examine a defendant's "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *State v. Degen*, 396 N.W.2d 759, 760 (S.D.1986); *Murphy*, 506 N.W.2d at 133 (lying to the trial court is a proper factor to be considered by the sentencing court in determining defendant's attitudes toward society and prospects for rehabilitation); *State v. Lohnes*, 432 N.W.2d 77 (S.D.1988) (stating defendant's lack of remorse was properly considered at sentencing).

■ Pack repeatedly raped J.O. for over two years. He began raping P.O. when she was twelve years old and continued for six years. He used physical force and threats of abandonment to force his stepdaughters to submit. When T.O. resisted his advances, he made up excuses to beat her.

Pack shows no remorse for his acts but blames the girls for being "wild" and claims J.O. "asked me to have sex with her." The report by the court services officer shows "[e]very negative circumstance revealed in this pre-sentence investigation, from the robbery in Washington, the dishonorable discharge from the military, to the rape of his stepdaughter was continually justified by this defendant as being 'the other guy's fault.'" Pack is a repeat offender both as to his pattern of raping his stepdaughters and his additional criminal history.

Pack's chances for rehabilitation were described by the court services officer as "sickeningly bleak." This court has previously taken note of the high recidivism rate of sexual offenders. *In re R.P.*, 498 N.W.2d 364, 368 n. 3 (S.D.1993); *In re J.J.*, 454 N.W.2d 317, 325 n. 7 (S.D.1990).

The indictment charged Pack with twenty-six counts of rape—a possible sentence of 360 years in the penitentiary and a fine of $390,-000. Further, had the prosecutor filed a Part II Information alleging Park was an habitual criminal, he faced additional years added to his sentence under SDCL ch. 22–7. Under the plea agreement accepted by the court, Pack was allowed to serve his South Dakota sentence concurrently with a sentence from Wyoming. Further, the prosecutor dropped fugitive from justice charges against Pack.

The trial court had the benefit of a statement by Pack, a statement from his victim, an extensive pre-sentence report and a psychological evaluation of Pack before handing down a sentence. The court stated at sentencing:

> You have either sexually abused or attempted to sexually abuse all of your stepdaughters. You've got a long history of this. There's a history of physical abuse of those children.... You've been evaluated as being a pedophiliac. It's noted that you are a multiple offender and that you have likely offended in ways other than which you've been willing to disclose. You've been assessed as a high-risk offender. Without treatment, you're not safe to have in society. You've preyed upon young children, adolescents for your own sexual gratification.

For the repeated rape of J.O., Pack faced a potential sentence four times longer than his expected natural life. Thirty years for his predatory rapes is not excessive or cruel and does not shock the conscience of this court. We agree with the trial judge who stated, "I considered very strongly the presentence investigation and the psychological report that I had received, which indicated to me that this man needed to be put away for a long time to protect society."

As for the second prong of the test—whether Pack's sentence "shocks the conscience of men generally"—we have stated that "[p]ublic intent is reflected in the legislative acts defining the permissible punishment for specific crimes." *State v. Phipps*, 318 N.W.2d 128, 132 (S.D.1982) *appeal dismissed,* 406 N.W.2d 146 (S.D.1987).

As we expressed in *State v. Basker:*

We do not reach the Eighth Amendment proportionality analysis because we find Basker's sentence does not shock the conscience of the court, nor is it manifestly disproportionate to the crimes committed. The sexual abuse of children by their parental custodian violates the sacred trust that is the parent-child relationship. It distorts in the developing psyche of a child that which we as a society recognize as healthy human sexual behavior. The trial court's sentence of thirty years is within the statutory maximum. It neither shocks the conscience nor is disproportionate to the crimes Basker committed. The trial court did not abuse its discretion and we affirm.

468 N.W.2d 413, 418 (S.D.1991). Similarly, Pack's thirty-year sentence for the repeated rape of J.O. does not shock the conscience of this court nor is it manifestly disproportionate to the crimes he has committed. Because the sentence does not meet the threshold test of shocking the conscience, the issue of inter and intra jurisdictional proportionality will not be reached.[6]

We affirm.

WUEST and SABERS, JJ., concur.

AMUNDSON, J., concurs in result.

HENDERSON, J., dissents.

AMUNDSON, Justice (concurring in result).

The sentence imposed in this case is not shocking, nor do I find it disproportionate to the crime after reviewing the record.

This court has consistently advised defense attorneys to make a record at the trial court level when considering an appeal of the sentence. In *State v. Holloway*, 482 N.W.2d 306, 311 (S.D.1992), we stated:

> The settled record and sentencing transcript contain no record of information or data regarding proportionality having been presented to the trial court for its consideration when imposing sentence. That be-

ing the case, this court will not accept an invitation to second guess the trial court on its sentence.

This case was disposed of by entering a plea of nolo contendere on two counts of a twenty-six count indictment. Under SDCL 22-6-6.1 consecutive sentences are authorized for convictions on two or more offenses. Therefore, an attorney representing a defendant on an open plea can easily calculate what a client is facing as a potential sentence; namely, maximum years on each charge with the sentences to run consecutively. In anticipation of such a sentence, the defense attorney should assemble evidence needed for a proportionality presentation to the trial court at the time of sentencing. Of course, it goes without saying that it is difficult to know what the sentence will be until one actually hears the pronouncement from the court. If counsel is shocked after hearing the sentence, it would be appropriate at that time to move the court for the opportunity to present evidence on proportionality. In making such a motion, counsel should be prepared to make at least a threshold showing of why the trial court should reconsider the sentence, such as other sentences in the circuit or area.

Another option is SDCL 23A-27-4.1, which allows a trial court to review its final judgment and sentence. The appropriate proportionality data could then be presented to the trial court. Obviously, this should not be standard procedure, because precedent in this jurisdiction clearly shows that a sentence within statutory limits is infrequently found to be shocking or disproportionate to the crime. As a general rule, sentences within the statutory limits will not be set aside. *State v. Basker*, 468 N.W.2d 413 (S.D.1991).

The reality of life in the defense world is that you have to zealously represent your client's interest or else defend against an ineffective assistance of counsel claim. This court stated in *State v. Sheridan*, 383 N.W.2d 865, 867 (S.D.1986) (Henderson, J., specially concurring):

> have considered this issue and found it to be without merit.

---

6. Pack also claims the trial court abused its discretion by reviewing his sentence under the appellate "shock the conscience" standard. We

To assert disproportionality, all trial counsel must, in the words of the old-timers, 'root hog, or die!' In other words, counsel must dig, work, sweat, read, study, and produce statistics, criteria, history of cases, studies, court records, etc. See *Janssen*, 371 N.W.2d at 357. A foundation must be established at the trial level for the appellate advocacy to come.

After this case was remanded to the trial court, it is obvious that counsel attempted to "root like a hog" but the trial court did not allow it. In my opinion, the trial court abused its discretion by denying counsel the right to make his record for appeal after this matter was remanded for review of the sentence. Despite my opinion, this abuse does not warrant a reversal in this case.

HENDERSON, Justice (dissenting).

Here, the trial court refused to grant a sentencing hearing for Pack when Pack desired to utilize comparative sentencing statistics from the Unified Judicial System's (UJS) data base of sentencing information. Pack requested that Lawrence County pay funds to UJS, which is created by the State Constitution of South Dakota and funded by taxpayers' dollars each year by our State Legislature. This requested data is vital to effectively represent the indigent defendant, Pack, to present criteria under the proportionality review analysis. Said "analysis" was birthed under *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Introduced in evidence was a UJS letter of May 21, 1993, reflecting that these statistics could be produced for $448. If Pack had the money (which he does not), these statistics would have been available. In *Ake v. Oklahoma*, 470 U.S. 68, 76, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985), the United States Supreme Court expressed that it "has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." UJS would not release this information without receiving said money.

Pack, deprived of a hearing (1) to present sentencing statistics to the trial court (2) was also denied the right to even append UJS statistics to his brief. He did not have the money to produce the statistics. The upshot of all of this is that the Unified Judicial System, of which the Justices of this Court are stewards, has deprived Pack of a proportionality review of the "within and without the jurisdiction" proportionality test. Pack was totally denied a consideration in the sentencing process because he was indigent. Excessive or disproportionate sentences have been constitutionally offensive since 1892 in South Dakota. *State v. Becker*, 3 S.D. 29, 51 N.W. 1018 (1892). *See also, State v. Bad Heart Bull*, 257 N.W.2d 715, 720 (S.D.1977).

> On appeal, we first determine whether the sentence "shocks the conscience" *or* is so disproportionate to the crime that it *activates* the Eighth Amendment "within and without jurisdiction" proportionality tests. (Emphasis supplied mine.)

*State v. Lykken*, 484 N.W.2d 869, 879 (S.D. 1992). *Accord State v. Andrews*, 393 N.W.2d 76, 82 (S.D.1986); *State v. Weiker*, 366 N.W.2d 823, 827 (S.D.1985) (*Weiker II*). Notice that little word "or"; it is powerful.

As it now stands, Pack received the maximum sentence of 15 years on each count, to be served *consecutively*, which is a 30–year sentence. This certainly activates a fair examination, in my opinion, of a proportionality review analysis under the Eighth Amendment to the United States Constitution and Art. VI, § 23 of the South Dakota Constitution. Therefore, this case should be reversed and remanded with directions that a sentencing hearing be held below and Pack be then permitted to obtain statistics which are readily available from the UJS so that he may present sentencing statistics to the trial court for its consideration. And failing below (if such be the case), to establish a record for meaningful review by this Court.

For what purpose are these statistics compiled in the Criminal Justice Information System? To gather dust in the archives at Pierre? To readily make available statistics to the state prosecutors of South Dakota for

their information, as well as the Department of Criminal Investigation, Highway Patrol, State Police Radio, Driver Improvement, and Game, Fish & Parks? But to then deny these statistics to the defense lawyers of this state so that they cannot effectively represent the constitutional rights of their client?

Under the authority of SDCL 19–10–2 and *State v. Oster,* 495 N.W.2d 305, 312 (S.D. 1993), judicial notice is taken of the following documents within the Unified Judicial System records, reflecting the availability of sentencing statistics to "various law enforcement agencies."

### First Document

The Clerk of Court Criminal Docketing system was developed as part of a state wide Criminal Justice Information System (CJIS). *The system is designed to automatically report criminal dispositions from the Clerk of Court's records to various law enforcement agencies* such as Driver Improvement, Highway Patrol, Division of Criminal Investigation, and Game, Fish & Parks. In addition to alleviating the dispositional reporting for the case information, accounting charges information, and various forms such as bench warrants and jail forms. The name and warrant search features of the on-line system allow the clerk to instantly find requested cases. The courtroom docketing feature of CJIS allows the clerk to immediately enter sentences on a terminal in the courtroom. (Emphasis supplied mine.)

This on-line system has been operational in Hughes County since August of 1988. During fiscal year 1990, Yankton, Lawrence, and Brown counties were converted to the on-line CJIS system. Brookings, Minnehaha Circuit Court, Meade, Davison, Codington, Lake, and Pennington counties were placed on-line during fiscal year 1991. Union, Lincoln, Beadle, Clay, and Roberts counties were placed on-line in fiscal year 1992.

Beginning in fiscal year 1993, counties placed on-line did not require courtroom docketing because of their volume, and terminals were only placed in the Clerk of Court's office. Charles Mix, Bon Homme, Kingsbury, Moody, Walworth, Day, Tripp, Lyman, Jackson, Stanley, Custer, Fall River, and Butte counties were placed on-line in fiscal years 1993 and 1994. Turner, Grant, Brule, Spink, Gregory, and Bennett counties are budgeted to be placed on-line in fiscal year 1995. At the end of fiscal year 1995, there will be 35 counties operating on the on-line CJIS. The remaining counties in the state are operating on the "batch" CJIS system. Programs are maintained by the Unified Judicial System.

### Second Document

From a document within the UJS, submitted as a *budget* document for FY 88, of which I also take judicial notice, it is clear that during the summer of 1983, Governor William Janklow appointed a task force to determine the feasibility of a statewide Criminal Justice Information System. Personnel from UJS and law enforcement agencies were drawn together to establish an on-line system (originally) in the thirteen largest criminal case filing counties. This comprised approximately 60–70% of the criminal caseload in South Dakota. Governor Janklow gave a formal go-ahead to the project in November of 1984. This system was birthed and it exists today. It should be noted that this system will automate manual procedures which (in FY 1988) processed approximately $24.9 million annually. Its creation spawned the groundwork for a new accounting system for the UJS. This same document expresses that "at the end of fiscal year 1995, there will be 35 counties operating on the on-line CJIS." All remaining counties in the state are operating on what is known as the "batch CJIS system." Are data, statistics, and records available for proportionality review? Yes. But apparently not to defense counsel in this state if counsel represents an indigent and a trial judge will not enter an order for a county to pay for these available statistics.

### Third Document

And the taxpayers of South Dakota, what have they contributed to the CJIS system in recent years and what is the projection in dollars for 1994 and 1995?

| | |
|---|---|
| Actual Expense FY 90 | $100,217 |
| Actual Expense FY 91 | $152,185 |
| Actual Expense FY 92 | $176,277 |
| Actual Expense FY 93 | $175,130 |
| Projected Expense FY 94 | $215,000 |
| Projected Expense FY 95 | $183,000 |

This amounts to over 1 million dollars funded or to be funded into this system by the taxpayers of South Dakota in a period of six years! There was no room, financially, for this defense lawyer to obtain records to defend his client. UJS wanted $448.00 from Pack.

It is inherently unfair to appoint defense counsel to represent a defendant in a criminal case, deny him sentencing data, and then expect counsel to accomplish his awesome responsibility of protecting his client in the sentencing phase. Counsel was absolutely stripped of defense tools, timely requested, regarding CJIS statistics which were available. I heartily disagree with the interpretation and emphasis in footnote 5 of the majority opinion regarding the holding in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Justice Scalia, writing for the Court, was joined by Chief Justice Rehnquist. Their exact viewpoint was not shared by seven other Justices. *See* my special concurrence, *Bult v. Leapley*, 507 N.W.2d 325, 333 (S.D.1993).

I do not, for one moment, approve of Pack's conduct. But the day of approving a sentence—simply because it is within statutory limits—is gone—like sod huts on the prairie. *Helm* said so, and so does *Harmelin*.

Therefore, I dissent.