**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Michael KAISER, Defendant and Appellant.**

No. 18562.

Supreme Court of South Dakota.

Argued Oct. 18, 1994.

Decided Jan. 25, 1995.

Rehearing Denied March 1, 1995.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

William D. Gerdes of Williams, Gellhaus & Gerdes, P.C., Aberdeen, for defendant and appellant.

WUEST, Retired Justice.

Michael Kaiser was found guilty of two counts of Conspiracy to Commit Murder under SDCL 22–3–8 and sentenced to two concurrent terms of life imprisonment without the possibility of parole. Kaiser appeals the judgment and sentencing on grounds that South Dakota lacked jurisdiction to convict him and that the sentence of two life terms for conspiracy to commit murders which did not, in fact, occur constitutes cruel and unusual punishment. Because we conclude South Dakota did have jurisdiction in this case and the sentencing did not constitute cruel and unusual punishment, we affirm.

## FACTS

This is Kaiser's second appeal of his conviction. *See State v. Kaiser*, 504 N.W.2d 96 (S.D.1993) (*Kaiser I*). In *Kaiser I*, we reversed and remanded, holding the trial court's supplemental instructions to the jury more than likely had a coercive impact on the jury which necessitated a new trial. On remand, Kaiser was convicted of two counts of conspiracy to commit murder in the first degree.

Kaiser was found guilty of conspiring with one Roger Rohde to kill Kaiser's ex-wife, Mary Elijah (nee Wertman) and her then-boyfriend, Bob Elijah. The murders were planned in this state and were to be committed in North Dakota where both victims were living. Allegedly, Kaiser believed these murders would resolve a custody dispute with his ex-wife in his favor. The murder scheme was planned over several months' time and items were gathered to effect its purpose. These items included two guns, gloves, hair dye, drugs, flares, wire cutters, stolen license plates and bolts with which to attach them. Kaiser altered Rohde's car by installing an additional gas tank and an interior switch to turn off the car's running lights. According to the plan, Kaiser was to remain in South Dakota during a period of visitation with his daughter, thus providing his alibi. Rohde was to travel to North Dakota to perform the actual killings, scattering drugs on the premises to make the deaths appear to be the result of a drug deal gone sour. The plan then called for Rohde to burn the house. Kaiser and Rohde made several trips to the North Dakota site in preparation for the murders. On one of these trips, Kaiser and Rohde found pornographic magazines in the home, pinned pictures from the magazines onto the bedroom walls, scattered them around the home, and took photographs of the scene they had created. Kaiser instructed Rohde to mail the exposed film to him from a different North Dakota location and had the film developed, hoping to use the pictures in his custody dispute with his ex-wife.

Prior to the killings, Rohde contacted a Day County deputy sheriff and disclosed both the murder plan and Rohde's intention not to follow through with the plan. The murders never took place. Rohde testified against Kaiser at Kaiser's trial. A jury found Kaiser guilty of two counts of conspiracy to commit murder in the first degree. Kaiser was sentenced to two concurrent terms of life imprisonment according to South Dakota's conspiracy statute, which mandates a punishment one classification less severe than the underlying felony to be committed.

## ANALYSIS AND CONCLUSION

### ISSUE I: WHETHER SOUTH DAKOTA LACKS JURISDICTION TO TRY A CONSPIRACY CHARGE WHERE THE UNDERLYING OFFENSE OCCURRED OUTSIDE THE STATE'S TERRITORIAL BORDERS

Kaiser challenges the trial court's jurisdiction to convict him under South Dakota's conspiracy statute, SDCL 22–3–8. That statute provides, in pertinent part, that it is a crime if:

> two or more persons conspire, either to commit *any offense against the state of South Dakota*, or to defraud the state of South Dakota, or any county, township, school district or municipal corporation in any manner or for any purpose, and one or more of the parties do any act to effect the object of the conspiracy.... (emphasis added).

Kaiser argues that because the murders were to take place in North Dakota against North Dakota residents, they cannot be construed to be offenses against the state of South Dakota.

Kaiser's jurisdictional challenge requires us to engage in statutory construction of South Dakota's conspiracy statute. Matters of statutory construction are questions of law and are reviewed de novo. *State v. French*, 509 N.W.2d 693, 695 (S.D.1993); *State v. Harris*, 494 N.W.2d 619, 622 (S.D. 1993). As we recently stated in *French*, " '[t]he purpose of the rules of statutory construction is to discover the true intention of law, and that intention must be ascertained primarily from the language expressed in the statute.' " *French*, 509 N.W.2d at 695 (quot-

ing *Hieb v. Opp*, 458 N.W.2d 797, 800 (S.D. 1990)). The statute's intent must be determined from what the legislature said and not from what this court thinks the legislature should have said. We must confine our determination of intent to the language used by the legislature. *French*, 509 N.W.2d at 695 (citing *In re AT & T Info. Sys.*, 405 N.W.2d 24, 27 (S.D.1987)). The language of a statute is presumed to convey ordinary meaning, unless the context or the legislature's apparent intention justifies departure. *French*, 509 N.W.2d at 695 (citing *Meyerink v. Northwestern Pub. Serv. Co.*, 391 N.W.2d 180, 183–84 (S.D.1986)). Another abiding rule of statutory construction is "that when the language of a statute is clear, certain and unambiguous there is no need of statutory construction and the only function of the court is to declare the meaning of the statute as expressed." *Sioux Falls Sch. Dist. v. South Dakota Subsequent Injury Fund*, 504 N.W.2d 107, 110 (S.D.1993) (citing *AT & T Info. Sys.*, 405 N.W.2d at 27). Providing further guidance to our construction of South Dakota's conspiracy statute is SDCL 22–1–1:

> The rule of the common law that penal statutes are to be strictly construed has no application to this title. All its criminal and penal provisions and all penal statutes are to be construed according to the fair import of their terms, with a view to effect their objects and promote justice.

■ Kaiser argues that South Dakota's conspiracy statute is triggered only when the underlying substantive offense is a crime "against the state of South Dakota." Kaiser then notes that the underlying offense in his case involves the murder of two nonresidents to occur in North Dakota—a crime that cannot possibly be thought to be "against the state" of South Dakota. From this, Kaiser concludes that his underlying offense does not fit the statutory requirements of SDCL 22–3–8, therefore his conspiracy convictions should be reversed. However, Kaiser's argument misconceives the meaning of the phrase "offense against the State" and the jurisdictional reach of this court.

South Dakota's general conspiracy statute was adopted from the federal statute prohibiting conspiracies against the United States.

*State v. Henglefelt*, 72 S.D. 306, 309, 33 N.W.2d 492, 494 (1948). In *Henglefelt*, this court interpreted the phrase which Kaiser now argues cannot apply to a crime outside South Dakota's borders. The defendants in *Henglefelt* argued that the term "offense against the state" could only describe conspiracies to commit offenses against the state government in exercise of its sovereign authority and could not be construed to include conspiracies to commit crimes against private property or private citizens. *Henglefelt*, 33 N.W.2d at 493. This court concluded the term "offense against the State" in our statute means "to do that which is declared by the law of the state to be prohibited and criminal." *Henglefelt*, 33 N.W.2d at 494. The Supreme Court of West Virginia, interpreting a statute nearly identical to SDCL 22–3–8, arrived at a similar conclusion. *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62, 65 (1981) (agreement to commit any act which is made a felony or misdemeanor by state law is conspiracy to commit "offense against the state" within the meaning of the general conspiracy statute). *See also State v. Stevens*, 190 W.Va. 77, 436 S.E.2d 312, 315 (1993).

The underlying offense supporting Kaiser's two conspiracy convictions is murder in the first degree. Clearly, South Dakota law prohibits this crime, as does the law in all fifty states, although not all states classify homicides by degrees. SDCL 22–16–4. By definition, then, as derived almost fifty years ago in *Henglefelt*, the crime of murder in the first degree is an "offense against the state of South Dakota" as it is an offense our statute has declared prohibited and criminal. This conclusion comports with the rule of statutory construction that "[w]ords used by the legislature are presumed to convey their ordinary, popular meaning, unless the context or the legislature's apparent intention justifies departure." *Meyerink*, 391 N.W.2d at 183–84 (S.D.1986). Here, the statute is not restricted by the residency of the victim or the situs of the act but makes plain that murder in the first degree is criminally prohibited in South Dakota.

Kaiser next argues that the state of South Dakota lacks jurisdiction to try him for con-

spiracy to commit an underlying offense which was to occur outside the state's borders. In *State v. Winckler,* 260 N.W.2d 356 (S.D.1977), this court set out the test for jurisdiction in a criminal prosecution where the criminal acts occurred outside the state's borders.

> [T]he fact that an offense originated outside the state's jurisdiction does not necessarily deprive the state of jurisdiction ... State jurisdiction properly lies when acts done outside its jurisdiction are intended to produce and do produce a detrimental effect within that jurisdiction.

*State v. Winckler,* 260 N.W.2d at 360 (citations omitted). Clearly, a decision by this court, as desired by Kaiser, which would allow our state residents to conspire in South Dakota to commit murder in other states without retribution merely because the perpetrators chose an out-of-state location to commit their underlying criminal offenses would produce a detrimental effect within this jurisdiction. Such a decision would make a mockery of SDCL 22–3–8 and the statutory directive that "[a]ll criminal and penal provisions and all penal statutes are to be construed according to the fair import of their terms, with a view to effect their objects and promote justice." SDCL 22–1–1. Kaiser's argument also attempts to blur the distinction between conspiracy as a separate criminal offense and the underlying criminal act. "[T]he gist of conspiracy is the agreement, and so the agreement is punishable even if its purpose is not achieved." LaFave & Scott, Criminal Law § 6.4, at 525 (2d ed. 1986). Here, the agreement was completed in South Dakota and is punishable under SDCL 22–3–8. South Dakota had subject matter jurisdiction to try Kaiser for the crime of conspiracy to commit first degree murder.

We decline to adopt Kaiser's argument and thereby decline to create in South Dakota a "safe haven" for those who wish to conspire in our state to break criminal laws in another state. *See* B.J. George, Jr., *Extraterritorial Application of Penal Legislation,* 64 Mich. L.Rev. 609, 625 (1966).

## ISSUE II: WHETHER KAISER'S SENTENCE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT

Kaiser's next argument is that the trial court's sentencing of two concurrent terms of life imprisonment without the possibility of parole constitutes cruel and unusual punishment where the underlying substantive offenses never occurred and where Kaiser is a first-time felony offender. In his brief to this court, Kaiser attempts to minimize this crime by stressing that no one was harmed or even remotely threatened by his actions and that the conspiracy was "played out only in the mind." Not only does this not comport with the facts in this case, but it shows that Kaiser misunderstands the nature of the crime of conspiracy.

> A conspiracy is a partnership in crime. It has ingredients, as well as implications, distinct from the completion of the unlawful project. For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws, is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime. It involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices. And it is characterized by secrecy, rendering it difficult of detection, requiring more time for its discovery, and adding to the importance of punishing it when discovered.

*Pinkerton v. United States,* 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489, 1495 (1946) (citations omitted).

Our conspiracy statute, SDCL 22–3–8(1), provides that a sentence for conspiracy to commit a felony shall be "one classification less severe than the felony to be committed." Kaiser's underlying felony is murder in the first degree, a Class A offense under our state's classification scheme. SDCL 22–16–12. According to SDCL 22–3–8(1), Kaiser's sentencing must comply with that of a Class B felony, life imprisonment in the state penitentiary. SDCL 22–6–1(2). The trial court, in handing down Kaiser's sentence, noted the sentencing structure was mandatory accord-

ing to SDCL 22–3–8 but the court did sentence the terms to run concurrently as opposed to consecutively in its discretion under SDCL 22–6–6.1.

■ "On appeal, we first determine whether the sentence 'shocks the conscience' or is so disproportionate to the crime that it activates the Eighth Amendment 'within and without jurisdiction' proportionality tests." *Bult v. Leapley*, 507 N.W.2d 325, 327 (S.D. 1993); *State v. Gehrke (Gehrke II)*, 491 N.W.2d 421, 423 (S.D.1992); *State v. Lykken*, 484 N.W.2d 869, 879 (S.D.1992); *State v. Basker*, 468 N.W.2d 413, 418 (S.D.1991). It is settled law in this state that absent a sentence which is so excessive in duration that it shocks the conscience of the court, a sentence that is within statutory limits is not reviewable on appeal. *Bult*, 507 N.W.2d at 327; *Gehrke II*; 491 N.W.2d at 423; *Lykken*, 484 N.W.2d at 879; *State v. Holloway*, 482 N.W.2d 306, 311 (S.D.1992); *State v. Janssen*, 371 N.W.2d 353, 356 (S.D.1985) (citing cases). This court has developed a two-fold test to determine whether the sentence is so constitutionally offensive as to shock the conscience:

> First, is the punishment so excessive or so cruel, 'as to meet the disapproval and condemnation of the conscience and reason of men generally.' And second, whether the punishment is so excessive or so cruel as to shock the collective conscience of this court.

*Bult*, 507 N.W.2d at 327; *State v. Shilvock–Havird*, 472 N.W.2d 773, 779 (S.D.1991); *State v. Reed*, 451 N.W.2d 409, 411 (S.D. 1990); *State v. Phipps*, 318 N.W.2d 128, 132 (S.D.1982).

■ We cannot say, in light of the circumstances of this case, that the sentence imposed here shocks the conscience. Kaiser was sentenced under a mandatory statutory scheme triggered by SDCL 22–3–8 which dictates sentencing one classification less severe than the felony to be committed. Kaiser was convicted of two counts of conspiracy to commit first degree murder, a crime punishable by death or life imprisonment. One classification less severe, by statute, requires a sentence of life imprisonment. Also, we note that Kaiser's crime was not the result of

spontaneous, reckless or indifferent action nor was it a crime committed in the heat of passion. It was instead the result of premeditated, intentional acts taking place over several months' time as he and Rohde gathered items needed to carry out their plan, traveled to the intended crime scene to perfect their plan, all while evidencing a complete disregard for the lives of others and a spirit of fierce hatred and revenge. The United States Supreme Court has noted that courts are "entitled to look at a defendant's motive in committing a crime. Thus a murder may be viewed as more serious when committed pursuant to a contract." *Solem v. Helm*, 463 U.S. 277, 293–94, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637, 651 (1983). That Kaiser's plan failed and his ex-wife and her boyfriend, now husband, are still alive is not due to any change of heart by the defendant. That the murders were not, ultimately, committed does not lessen the charge for conspiracy to commit them or decrease sentencing under that charge.

"Every felony sentence is not subjected to exhaustive review; generally, a sentence within the statutory maximum is not disturbed." *Reed*, 451 N.W.2d at 410 (citing *State v. Weiker*, 366 N.W.2d 823, 827 (S.D. 1985)). "Where the court is asked to review a punishment within the statutory limits, the question is whether the trial court abused its discretion." *Reed*, 451 N.W.2d at 411 (citing *Phipps*, 318 N.W.2d at 132 (1982)). Because this court is not shocked by sentencing that comports with statutorily-mandated terms of life imprisonment, the issue of proportionality need not be reached. *State v. Castaneira*, 502 N.W.2d 112, 115 (S.D.1993).

## ISSUE III: WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

Kaiser argues there was insufficient evidence to convict him of the conspiracy charges and, thus, the trial court erred in denying his motion for a judgment of acquittal. We have considered this issue and find no error by the trial court. There was suffi-

cient evidence presented to sustain the jury's verdict.

Affirmed.

MILLER, C.J., and SABERS, AMUNDSON, and KONENKAMP, JJ., concur.