1996 SD 7

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lawrence James HENJUM, Defendant and Appellant.**

No. 19078.

Supreme Court of South Dakota.

Considered on Briefs Oct. 19, 1995.

Decided Jan. 24, 1996.

Henjum and Nelson were friends and roommates residing in a trailer home they rented in Mitchell, South Dakota. After a party in which everyone was consuming alcohol, Henjum returned to the trailer and went to bed. Later Nelson, Billie Worm, Adrienne Pina and Roxy Tines arrived. They awakened Henjum by jumping on his bed. Henjum began kissing Worm. Everyone left the bedroom, except for Henjum and Worm, and they proceeded to have sexual relations. Henjum was afraid his girl friend would find out about this, so he made Worm promise not to tell anyone they had been together. At approximately 5:00 A.M., Pina and Nelson again entered Henjum's bedroom. Henjum got some beer and he, Nelson, Worm and Pina sat on his bed. Henjum went to the bathroom and when he returned, he walked over to his dresser and rested his arm against it. Without saying anything, he picked up his 7–millimeter rifle. He moved the safety button and lifted the bolt, apparently to see if it was loaded. Worm and Pina screamed at Henjum telling him to put the gun down and warning him that it was loaded. Without responding, Henjum turned the rifle toward Nelson and fired it. Henjum later admitted he always kept his guns loaded. After shooting Nelson, Henjum walked down a hallway, set the gun down, stepped outside, got into his car and drove away. Henjum was apprehended approximately six weeks later in Texas.

[¶ 3] Henjum pleaded guilty to manslaughter in the first degree pursuant to a plea agreement. The circuit court reviewed a lengthy pre-sentence investigation report which contained a psychological examination, letters of recommendation from family members and a nine-page letter of explanation from Henjum. He claimed the shooting was accidental. After hearing extensive testimony before sentencing the court concluded the shooting was not an accident. Henjum was quite familiar with the weapon and all his behavior demonstrated an intentional act. Furthermore, testing showed the rifle could not have misfired: it would not discharge unless the safety was off, a round was bolted down, and the trigger was pulled. Henjum was sentenced to forty-five years in the

Mark Barnett, Attorney General, John M. Strohman, Assistant Attorney General Attorneys, Pierre, for plaintiff and appellee.

Donna L. Bucher, of Tinan, Smith & Bucher, Mitchell, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1] Defendant appeals his forty-five year sentence for manslaughter in the first degree and the order for restitution. We affirm.

### Facts

[¶ 2] Lawrence James Henjum was charged with murder in the first degree, murder in the second degree and manslaughter in the first degree after he shot and killed Mark Anthony Nelson on February 27, 1994.

South Dakota State Penitentiary. The court ordered him to pay restitution to the victim's parents for funeral and counseling expenses. Henjum was also ordered to pay for counseling for those persons who witnessed the shooting, but the court set no specific amount of counseling costs to be paid.

[¶ 4] Henjum later moved the court to reconsider his sentence, but was denied. He appeals, raising the following issues:

I.    Whether the sentence constitutes cruel and unusual punishment.

II.   Whether the trial court erred in granting restitution.

## Analysis

### [¶ 5] I. Sentence

[¶ 6] We have previously set forth the analysis and standard of review to be applied when reviewing whether a sentence constitutes cruel and unusual punishment. "On appeal, we first determine whether the sentence 'shocks the conscience' or is so disproportionate to the crime that it activates the Eighth Amendment 'within and without jurisdiction' proportionality tests." *Bult v. Leapley*, 507 N.W.2d 325, 327 (S.D.1993)(quoting *State v. Lykken*, 484 N.W.2d 869, 879 (S.D.1992)). "It is settled law in this state that absent a sentence which is so excessive in duration that it shocks the conscience of the court, a sentence that is within statutory limits is not reviewable on appeal." *State v. Kaiser*, 526 N.W.2d 722, 726 (S.D.1995); *State v. Pack*, 516 N.W.2d 665, 667 (S.D.1994); *Bult*, 507 N.W.2d at 327; *Lykken*, 484 N.W.2d at 879.

[¶ 7] The two-fold test to determine whether a sentence is so constitutionally offensive as to shock the conscience is:

First, is the punishment so excessive or so cruel, "as to meet the disapproval and condemnation of the conscience and reason of [humankind]." And second, whether the punishment is so excessive or so cruel as to shock the collective conscience of this court.

*Kaiser*, 526 N.W.2d at 726; *Bult*, 507 N.W.2d at 327; *State v. Shilvock–Havird*, 472 N.W.2d 773, 779 (S.D.1991); *State v. Reed*, 451 N.W.2d 409, 411 (S.D.1990); *State v. Phipps*, 318 N.W.2d 128, 132 (S.D.1982).

[¶ 8] The first prong of the test, whether a sentence shocks the conscience of humankind, should be determined by the "[p]ublic intent [as] reflected in the legislative acts defining the permissible punishment for specific crimes." *Pack*, 516 N.W.2d at 668 (quoting *Phipps*, 318 N.W.2d at 132). Our Legislature determined first degree manslaughter should be punished as a Class 1 felony, which may carry a sentence of up to life imprisonment under SDCL 22–6–1. Such broad sentencing authority suggests that a term less than a life sentence would be unlikely to shock the conscience of humankind.

[¶ 9] When determining whether a sentence shocks the collective conscience of this Court, we consider various factors. An appropriate sentence requires the court to acquire a thorough acquaintance with the character and history of the person before it. *State v. Ferguson*, 519 N.W.2d 50, 54 (S.D. 1994); *Pack*, 516 N.W.2d at 667. The court should examine a defendant's "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *Ferguson*, 519 N.W.2d at 54; *Pack*, 516 N.W.2d at 668; *State v. Degen*, 396 N.W.2d 759, 760 (S.D. 1986). Henjum was gainfully employed and his previous criminal record, while not clean, was limited to nothing more serious than Class 1 misdemeanors. Henjum was found to have above average intelligence. Yet he fled the scene of the crime and was at large for approximately six weeks. Not once in his numerous phone calls to his girl friend and other individuals while he was on the run did he ever say Nelson's death was accidental, only that he was sorry it had happened. The sentencing court found his habit of always keeping guns loaded especially troubling considering his frequent alcohol use. The night before he killed Nelson, after an argument with Travis Hohns, Henjum bragged to a friend he could kill Hohns and get away with it. Even more troubling, Henjum told his friend he could kill Nelson and "live with it."

■ [¶ 10] Henjum pled guilty to first degree manslaughter in exchange for a dismissal of more serious charges. He knew the State was seeking a sentence of fifty years when he made this plea agreement. In sum, he reaped the "benefits of his bargain." *See Ferguson*, 519 N.W.2d at 54.

> He does not attack the plea bargain. He does not even suggest that he be permitted to withdraw his plea and stand trial on all three counts. He does not complain that the bargain was tainted in any manner; that he was incompetent, under duress, or counseled inadequately. *He simply wants all the fruits of his bargain without compliance on his part.* ... Lacking any such showing, he cannot be heard to complain that the trial court abused its discretion when it imposed the maximum sentence which appellant himself had freely and voluntarily agreed to.

*State v. Left Hand Bull*, 288 N.W.2d 83, 84 (S.D.1980) (emphasis added)(footnote omitted). "Where the court is asked to review a punishment within the statutory limits, the question is whether the trial court abused its discretion." *Kaiser*, 526 N.W.2d at 726; *Reed*, 451 N.W.2d at 411. In reviewing the record and the sentencing court's findings we conclude Henjum's sentence transgresses none of the standards necessary to establish it as cruel and unusual. Thus we need not reach the proportionality issue. *Kaiser*, 526 N.W.2d at 726; *State v. Castaneira*, 502 N.W.2d 112, 115 (S.D.1993).

[¶ 11] **II. Restitution**

[¶ 12] Henjum made no objection to the order of restitution at the sentencing hearing or during the motion for reconsideration of his sentence. Henjum contends, nonetheless, the trial court committed plain error when it ordered restitution because the court failed to advise him of the possibility of restitution, and the State did not advise him it would be requesting restitution in the plea agreement. The State concedes in its brief that Henjum was not advised by the trial court or the State of the possibility of restitution at any time prior to imposition of sentence and the order of restitution.*

■ [¶ 13] An award of substantial restitution without articulating that possibility in a plea bargain violates a defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article VI, § 2 of the South Dakota Constitution. *State v. Wilson*, 459 N.W.2d 457, 459 (S.D.1990); *State v. Wolff*, 438 N.W.2d 199, 202 (S.D.1989). The question is whether Henjum waived the issue by failing to object and if so, whether the restitution order constitutes plain error. Even fundamental rights can be waived.

> This court has stated on numerous occasions that an issue not presented at the trial level will not be reviewed at the appellate level. The trial court must be given an opportunity to correct any claimed error before we will review it on appeal. Appellant did not at any time prior to this appeal raise a claim that his sentence was improper or illegal. Therefore, appellant's claim concerning his original sentence is not properly before this court.

*State v. Heftel*, 513 N.W.2d 397, 401 (S.D. 1994) (citations omitted). Henjum had ample opportunity to object at both the sentencing and in the motion for reconsideration. Such failure constitutes waiver.

■ [¶ 14] "The plain error rule applies only in exceptional cases and then it must be applied cautiously; the rule does not encompass every error that occurs at trial, but only those which are both obvious and substantial." *People In re R.R.*, 447 N.W.2d 922, 927 (S.D.1989); SDCL 23A–44–15. We fail to see how the court's restitution order rises to the level of plain error. Courts in South Dakota routinely order restitution as part of a sentence. The order here was not exceptional. One of the witnesses for whom restitution was required was struck with a bullet fragment. As Henjum failed to object

---

* Courts clearly have the authority to authorize restitution: "The court, in imposing sentence on a defendant who has been found guilty of a felony, may order in addition to the sentence that is imposed pursuant to the provisions of this section, that the defendant make restitution to any victim in accordance with the provisions of chapter 23A–28." SDCL 22–6–1.

and there was no plain error, we affirm the restitution order.

[¶ 15] Affirmed.

[¶ 16] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.