1996 SD 91

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Harold W. LEMLEY, Defendant and Appellant.**

**No. 19205.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1996.

Decided July 24, 1996.

---

· Mark W. Barnett, Attorney General, Jennifer K. Trucano, Assistant Attorney General, Pierre, for plaintiff and appellee.

Reed Rasmussen of Siegel, Barnett & Schutz, Aberdeen, for defendant and appellant.

JAMES ANDERSON, Circuit Judge.

[¶ 1] Pursuant to a plea agreement, Harold Lemley (Lemley) pled guilty to a reduced charge of first-degree manslaughter. SDCL 22–16–15. Counts of murder in the first degree and burglary were dismissed. Lemley appeals his 350 year sentence as unconstitutional cruel and unusual punishment. We affirm.

### FACTS

[¶ 2] Harold Lemley was born in Springfield, Ohio on November 2, 1973. Lemley was born into a severely dysfunctional family. His father was never known to him. His mother is learning disabled and frequently had different boyfriends. Some of these boyfriends physically, sexually and emotionally abused Lemley. One was prosecuted for sexually molesting him.

[¶ 3] Lemley had many contacts with Ohio social workers during his childhood. His mother sought foster care for Lemley because she could not care for him. She went

so far as to set Lemley up to steal money so he would be taken away from her. Lemley was introduced to alcohol and marijuana at age twelve or thirteen by one of his mother's boyfriends. He has experienced problems with the abuse of alcohol and marijuana since he began using. Lemley lived in six separate foster homes and spent almost two years of his life in group homes before reaching eighteen. Lemley was diagnosed as learning disabled at an early age and has only completed his education through the tenth grade. He reads at a third grade level, performs mathematical skills at a sixth grade level and is unable to express himself in writing.

[¶ 4] Lemley came to Aberdeen, South Dakota as a carnival worker. When the carnival left town, Lemley remained. He was eventually joined by a friend from Ohio, Silver McClanahan (McClanahan), whom he met at a group home in Ohio. In Aberdeen, Lemley and McClanahan worked together on construction projects and odd jobs.

[¶ 5] During this time, McClanahan became involved with an Aberdeen resident named Ronald Brodersen (Brodersen). McClanahan moved in with Brodersen and a homosexual relationship ensued. Some time prior to June 18, 1994, McClanahan awoke at Brodersen's residence believing Brodersen had sexually assaulted him during the night. This alleged sexual assault made McClanahan want to kill Brodersen. McClanahan telephoned Lemley and asked him to help kill Brodersen. Lemley refused to participate in the killing but agreed to accompany McClanahan to Brodersen's house to perform construction job estimates.

[¶ 6] Upon arrival at Brodersen's house, McClanahan asked Lemley to "finish off" Brodersen. Lemley declined. McClanahan asked Lemley to trip Brodersen with an electrical cord so McClanahan could beat Brodersen with a hammer. Lemley did not trip Brodersen. Later, while in another room, Lemley heard a loud noise in the kitchen. He entered the kitchen and observed McClanahan beating Brodersen over the head with a hammer. McClanahan struck Brodersen at least twelve times with the hammer. While McClanahan beat Brodersen, Broder-

sen cried out, "Why are you hitting me? Why are you mad at me?"

[¶ 7] Following the attack by McClanahan, Lemley tightened an electrical cord around Brodersen's neck. Lemley contends he did this at McClanahan's instruction because he thought Brodersen was already dead due to the blows from the hammer. McClanahan contends Brodersen was still alive and struggled when Lemley tightened the electrical cord. McClanahan and Lemley left the apartment with Brodersen's wallet and car and fled to Sioux Falls, South Dakota where they were eventually apprehended.

[¶ 8] Pursuant to a plea agreement, Lemley pled guilty to one count of first-degree manslaughter. The State dismissed counts of murder in the first-degree and burglary. No agreement as to a sentence cap or a term of years was made between the State and Lemley as part of the plea agreement. An extensive pre-sentence report was presented to the trial court detailing Lemley's history. The trial court sentenced Lemley to 350 years in the South Dakota State Penitentiary. Lemley is eligible for parole on August 15, 2038. His good time release date is December 30, 2170.

**ANALYSIS**

[¶ 9] Lemley argues a sentence of 350 years is unconstitutional cruel and unusual punishment because it shocks the conscience. The maximum sentence for first-degree manslaughter is life imprisonment. SDCL 22–16–15; *see* SDCL 22–6–1. The analysis and standard of review to be applied when reviewing whether a sentence constitutes cruel and unusual punishment have been previously set forth by this Court.

On appeal, we first determine whether the sentence "shocks the conscience" or is so disproportionate to the crime that it activates the Eighth Amendment "within and without jurisdiction" proportionality tests. It is settled law in this state that absent a sentence which is so excessive in duration that is shocks the conscience of the court, a sentence that is within statutory limits is not reviewable on appeal.

*State v. Kaiser,* 526 N.W.2d 722, 726 (S.D. 1995) (citations omitted). When reviewing a

punishment within statutory limits, "the question is whether the trial court abused its discretion." *Id.*

[¶ 10] The test for determining whether a sentence is so constitutionally offensive as to shock the conscience is two-fold:

First, is the punishment so excessive or so cruel, "as to meet the disapproval and condemnation of the conscience and reason of men generally." And second, whether the punishment is so excessive or so cruel as to shock the collective conscience of this court.

*State v. Pulfrey*, 1996 SD 54, ¶ 7, 548 N.W.2d 34; *State v. Henjum*, 1996 SD 7, ¶ 7, 542 N.W.2d 760; *State v. Chase in Winter*, 534 N.W.2d 350, 354 (S.D.1995); *Kaiser*, 526 NW2d at 726; *State v. Ferguson*, 519 N.W.2d 50, 54 (S.D.1994); *Bult v. Leapley*, 507 N.W.2d 325, 327 (S.D.1993) (*Bult II*); *State v. Shilvock–Havird*, 472 N.W.2d 773, 779 (S.D.1991); *State v. Reed*, 451 N.W.2d 409, 411 (S.D.1990); *State v. Phipps*, 318 N.W.2d 128, 132 (S.D.1982).

[¶ 11] The first test is whether Lemley's sentence "meets the disapproval and condemnation of the conscience and reason of men generally." *Id.* "[P]ublic intent is reflected in the legislative acts defining the permissible punishment for specific crimes." *State v. Pack*, 516 N.W.2d 665, 668 (S.D.1994) (quoting *Phipps*, 318 N.W.2d at 132, *appeal dismissed*, 406 N.W.2d 146 (S.D.1987)). The South Dakota Legislature has determined first-degree manslaughter is a Class 1 felony, punishable by life in prison. SDCL 22–16–15; *see* SDCL 22–6–1. While a sentence within the statutory maximum may shock the conscience of men generally as well as the conscience of this Court, *Bult II*, 507 N.W.2d at 328, the broad sentencing authority granted by the legislature suggests a sentence less than life imprisonment for first-degree manslaughter is unlikely to shock the conscience. *Henjum*, 1996 SD 7, ¶ 8, 542 N.W.2d 760. Lemley has failed to establish the sentence of 350 years shocks the conscience of men generally.

[¶ 12] The second test is whether the punishment is so excessive or so cruel as to shock the collective conscience of this Court. An appropriate sentence requires that:

the sentencing court should "acquire a thorough acquaintance with the character and history of the man before it." This study should examine a defendant's "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record."

*Chase in Winter*, 534 N.W.2d at 354–55 (quoting *Pack*, 516 N.W.2d at 667–68 (citations omitted)). The sentencing court should also consider rehabilitation prospects. *Bult II*, 507 N.W.2d at 328.

[¶ 13] Lemley is of borderline intelligence with diminished self-esteem and is an individual who is easily influenced and led by others. While Lemley would not have killed Brodersen absent McClanahan's suggestion, Lemley had numerous opportunities to avoid participation in the crime. Lemley readily participated in the attack by tightening the electrical cord around Brodersen's neck despite the fact he did not know Brodersen and Brodersen had never harmed him. Furthermore, Lemley participated in the attack even though he earlier declined because he knew it was wrong. Lemley did not call the authorities to express his fear of McClanahan or report the death of Brodersen. Lemley fled the scene of the crime in the victim's car and was not apprehended until days later in Sioux Falls, South Dakota, at which time he initially denied involvement in the crime.

[¶ 14] At the sentencing hearing, the trial court was thoroughly acquainted with Lemley's history and the circumstances surrounding the crime. Lemley has not challenged the trial court's knowledge of his character and history. The trial court also was aware of Lemley's potential for rehabilitation. The trial court concluded "Lemley's conduct since arrest also gives a slight hope for rehabilitation in the distant future." Based on this information, the trial court sentenced Lemley to 350 years in the penitentiary, making him parole eligible at age 64.

[¶ 15] Lemley argues that a term of 350 years results in a de facto life sentence because his good time release date, December 30, 2170, is long after his life expectancy.

Lemley contends his sentence forecloses the possibility of rehabilitation because the sentence is longer than his expected life. On the contrary, the sentencing court imposed a term of years rather than a life sentence to give Lemley an opportunity to rehabilitate himself. "[A] term of years allows for rehabilitation and allows [the defendant] hope." *Ferguson,* 519 N.W.2d at 54 (citations omitted). Furthermore, Lemley pled guilty to first-degree manslaughter in exchange for a dismissal of more serious charges. The dismissed charges carried a maximum penalty of death. SDCL 22–16–4; 22–3–3; *see* SDCL 22–6–1. Lemley reaped the benefit of his bargain by being sentenced to a term of years with a possibility of parole rather than being sentenced to death. *See Ferguson,* 519 N.W.2d at 54.

[¶ 16] Because Lemley's sentence does not shock the conscience of men generally or the collective conscience of this Court, it is not necessary for this Court to perform a proportionality review. Furthermore, Lemley has not presented this Court with proportionality statistics concerning other individuals convicted of first-degree manslaughter. Absent evidence of disproportionality, this Court will not second guess the trial court's sentence. *See State v. Holloway,* 482 N.W.2d 306, 311 (S.D.1992).

[¶ 17] In reviewing the record and the trial court's findings, we conclude Lemley's sentence is not so excessive in duration as to shock the conscience of this Court. Lemley's sentence is not unconstitutional cruel and unusual punishment.

[¶ 18] Affirmed.

[¶ 19] MILLER, C.J., and SABERS, KONENKAMP and AMUNDSON, JJ., concur.

[¶ 20] JAMES ANDERSON, Circuit Judge, for GILBERTSON, J., disqualified.