STATE of South Dakota, Plaintiff and Appellee,

v.

Toby Wade FERGUSON, Defendant and Appellant.

No. 18244.

Supreme Court of South Dakota.

Considered on Briefs on Oct. 7, 1993.

Decided June 29, 1994.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Robert Van Norman, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

Pursuant to a plea agreement, Toby Wade Ferguson (Ferguson) pled guilty to one count of rape, SDCL 22–22–1(1) and seven counts of sexual contact with a minor, (SDCL 22–22–7). Twenty-seven (27) counts of rape and thirty-one (31) counts of sexual contact with a minor were dismissed. Ferguson was sentenced to 180 years in the penitentiary on the rape conviction; 90 years were conditionally suspended. He was sentenced to fifteen years on each of the sexual contact convictions. The sentences were ordered to be served concurrently.

On appeal, Ferguson contends his sentence is excessive and violates the Eighth Amendment to the United States Constitution and Article VI, § 23 of the South Dakota Constitution. We affirm.

## FACTS

Ferguson was born on January 15, 1971. As a child, he was sexually abused. Ferguson never received treatment for this abuse. Throughout his school years, Ferguson was a good student who was active in extracurricu-lar activities and popular with his peers. He has no criminal record.

In 1989 Ferguson began attending Black Hills State University. He was a business administration major who, by the spring of 1992, completed 79 credit hours with a 2.42 GPA. While at BHSU, he also worked as a shift manager at Wendy's and at a roller skating rink. He was also involved in the karate club where he was voted the most inspirational student.

Through Ferguson's involvement as an instructor in the karate club and a participant in the Kinship Program (which pairs adult volunteers with children in a big brother/sister program) he became acquainted with young boys in the community. Ferguson developed relationships with eight boys ranging in age from eight to thirteen, and second through seventh grades. Ferguson befriended the boys and roller skated or played video games with them. Ferguson also gained the trust of the parent(s) who initially believed that he was a good role model and allowed their children to spend time with him. Ultimately the boys went to Ferguson's home and were victimized by Ferguson's acts of anal intercourse, oral sex, and fondling.

In 1992, as a result of relationships that he developed with these boys, Ferguson was ultimately charged with twenty-six counts of rape in violation of SDCL 22–22–1(1), two counts of rape in violation of SDCL 22–22–1(5), and thirty-eight counts of sexual contact with a minor.

Pursuant to a plea agreement Ferguson pled guilty to one count of rape and seven counts of sexual contact with a minor. The state agreed to dismiss the other fifty-eight pending counts of rape and sexual contact. It was agreed that Ferguson would not receive a sentence of life without parole on the rape count and that the sentences would run concurrently. The state's recommendation of a 200 year sentence on the rape charge did not form a basis for the plea agreement nor was it a sentence cap. No bargain was made as to a sentence cap or a term of years other than no life imprisonment without parole eli-

.. 

gibility.* Ferguson explained that he accepted this agreement to avoid the greater risk he saw if he went to trial on the enormous number of charges facing him.

An extensive presentence report was prepared detailing Ferguson's dysfunctional family life, his success as a student and worker, and his lack of a criminal career. The psychologist that interviewed him concluded that he needed ongoing retraining and psychotherapy/counseling. Since there were few alternatives in South Dakota for people with the "problem of the complexity of [Ferguson]" out-of-state placement was urged. Because Ferguson was not in total denial as to what he had done, the M.S.W. that evaluated him found Ferguson's "prognosis with appropriate treatment is good" and recommended out-of-state treatment. The STOP director at the penitentiary, however, noted Ferguson's high risk for reoffending due to the number of victims, Ferguson's young age, his threats of violence toward his victims, and the fact that all of the victims were prepubescent males. The court services officer noted that a pedophile like Ferguson who prefers prepubescent boys has a recidivism rate doubled that of other pedophiles.

The presentence report also included victim impact interviews and interviews with the victims' parents detailing the lasting impact that Ferguson's sexual acts had on the victims and their families.

When sentencing Ferguson the trial court explained its reasoning which we set forth in full:

> THE COURT: Mr. Ferguson, based upon everything I have read in this case, I have to say this is the grossest case of sexual abuse against children that I have seen. The damage done to these kids cannot

readily be determined and it certainly cannot be undone.

When the State first presented their recommendation which was something like a 200 year sentence with 110 years suspended under various conditions, a lot of which conditions I don't have a lot of control over, I thought it didn't sound like much of a plea bargain and it still isn't. There is no bargain here for anybody. I don't think anybody can get a bargain in a mess like this.

There is a benefit. There is a benefit to the public in that these kids did not have to go through the anguish, the grief and trauma of coming in here in front of a jury after they testified in front of the grand jury, of having to go to school and maybe having other children pointing at them and giggling to each other and other things that they probably already had gone through. There was a benefit to you. Certainly a benefit to you.

As I read that grand jury transcript, from what these kids had to say there is no doubt in my mind that if you had gone to trial, despite the best efforts of your most capable lawyer, Mr. Van Norman, I think you would have been convicted. I am sure you would have been convicted of the rape charge, the sexual contact charges. I think if I had to listen to what I read and if it would have sounded like I think it would have sounded in this courtroom, I would have felt compelled to impose a life sentence. Your plea agreement precludes a life sentence in your case. And I guess the reason I feel a need to explain is because to a reader of the newspaper or a news viewer, they read about how this 22 year old man with no prior criminal record

---

* The trial court went through a painstakingly detailed explanation of the plea agreement with Ferguson to ensure that Ferguson understood and was fully aware of the plea agreement. The trial court's explanation concluded with:

> THE COURT: To sum it up then, Mr. Ferguson, I think there are two limitations on the Court under this plea agreement. Number one is that the sentence imposed on the rape charge cannot be a life sentence. It can only be a sentence for a term of years. But the 200 years is not any type of an agreement. It's not a maximum, it's not a minimum. It's a recommendation. The second assumption is and the second limitation on the Court is that all of the sentences will be concurrent as opposed to consecutive. Those are the only two limitations that I see in this plea agreement on the Court other than what maximums are set by law.
>
> Do you understand that?
>
> MR. FERGUSON: Yes.
>
> THE COURT: Any questions to ask me about your plea agreement?
>
> MR. FERGUSON: No.

obtained this hefty criminal sentence in this case and would have to ask themselves, "How could this be?" I guess the only response I could make is that the only people that could fully understand this sentence would be maybe yourself and anybody who read the testimony of these kids or maybe somebody that lived with one of these kids.

Based upon everything that I have seen, there is obviously nothing else I can do for these kids other than to make the system work. I don't see anything I can do other than see that there aren't anymore kids in the near future in your case.

Based upon everything that's been presented, with respect to Counts 14, 20, 21, 22, 25, 54 and 55, each of which is a Class 3 felony, I'm going to impose a prison sentence in the amount of 15 years as to each count to run concurrent.

With respect to Count 4, first degree rape, it will be the judgment and sentence of the Court that you be imprisoned in the state penitentiary for a period of 180 years.

I'm going to suspend 90 years of that sentence under the following terms and conditions.

That you receive both inpatient and outpatient sexual offender counseling either prior to parole or while on parole. That you not participate in any activities involving children. That you not possess any pornographic materials. That, of course, you obey all state and federal laws and all terms and conditions of any parole agreement.

I don't think at the present time the State of South Dakota has the type of program that you are going to require from what I have seen. Given your age, there is no doubt in my mind that eventually you will be released. I hope but I cannot guarantee that you receive the treatment that you require before you are released on parole with supervision or without supervision.

The sentence on Count 4 will run concurrent with the sentences imposed on the other counts.

I will give you credit for all the time that you have spent in jail.

You will be remanded to the custody of the sheriff to begin your sentence.

\* \* \* \* \* \*

THE COURT: I hope some day there is some sense to your life because this entire case is a total waste of a lot of people Court will be in recess.

WHETHER IMPOSITION OF A 180 YEAR PENITENTIARY SENTENCE WITH 90 YEARS SUSPENDED IS UNCONSTITUTIONAL?

"On appeal, we first determine whether the sentence 'shocks the conscience' or is so disproportionate to the crime that it activates the Eighth Amendment 'within and without jurisdiction' proportionality tests." *State v. Lykken,* 484 N.W.2d 869, 879 (S.D.1992); *State v. Basker,* 468 N.W.2d 413, 418 (S.D.1991). *Accord State v. Andrews,* 393 N.W.2d 76, 82–83 (S.D. 1986); *Weiker II [State v. Weiker],* 366 N.W.2d [823] at 827 (S.D.1985). "Absent a sentence which is so excessive in duration that it shocks the conscience of the court, it is well settled in South Dakota that a sentence within statutory limits is not reviewable on appeal." *Lykken,* 484 N.W.2d at 879; *State v. Janssen,* 371 N.W.2d 353, 356 (S.D.1985) (citing cases). Stated alternatively, we will only engage in extensive review of a sentence where we have first determined the sentence was manifestly disproportionate to the crime. *State v. Holloway,* 482 N.W.2d 306, 310–311 (S.D. 1992); *Weiker II,* 366 N.W.2d at 827. "If a sentence is manifestly disproportionate to the crime, [in light of the gravity of the offense and harshness of the penalty] ... then the other two factors listed in [*Solem v.*] *Helm* [463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)] [sentence imposed on others in the same jurisdiction and in other jurisdictions] become more focused and require extensive review." *Weiker II,* 366 N.W.2d at 827. See also *Helm,* 463 U.S. at 292, 103 S.Ct. at 3011 77 L.Ed.2d at 650.

*State v. Castaneira,* 502 N.W.2d 112, 114–115 (S.D.1993) *quoting, State v. Gehrke,* 491 N.W.2d 421, 423 (S.D.1992).

The test to determine whether a sentence is so constitutionally offensive as to shock the conscience is two-fold. *State v. Shilvock–Havird,* 472 N.W.2d 773 (S.D.1991).

First, is the punishment so excessive or so cruel "as to meet the disapproval and condemnation of the conscience and reason of men generally." And second, whether the punishment is so excessive or so cruel as to shock the collective conscience of this court.

*Id.,* 472 N.W.2d at 779.

When determining a fitting sentence, the sentencing court should " 'acquire a thorough acquaintance with the character and history of the man before it.' " *State v. Carsten,* 264 N.W.2d 707, 709 (S.D.1978) (quoting *United States v. Hendrix,* 505 F.2d 1233, 1235–36 (2d Cir.1974)); *State v. Murphy,* 506 N.W.2d 130 (S.D.1993). This study should examine a defendant's "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." *State v. Degen,* 396 N.W.2d 759, 760 (S.D. 1986); *Murphy,* 506 N.W.2d at 133 (lying to the trial court is a proper factor to be considered by the sentencing court in determining defendant's attitudes toward society and prospects for rehabilitation); *State v. Lohnes,* 432 N.W.2d 77 (S.D.1988) (stating defendant's lack of remorse was properly considered at sentencing).

*State v. Pack,* 516 N.W.2d 665, 667–68 (S.D. 1994).

■ Ferguson argues that the conscience should be shocked because he is young, was molested himself and never received treatment, is a first-time offender, is a good student, has no arrest record, and is amendable to treatable.

Ferguson ignores several important aspects of this case, however. Ferguson pled guilty pursuant to a plea agreement in order to avoid a sentence of life without parole. At his plea hearing, Ferguson specifically stated on the record that under the plea agreement he received "the benefit of the bargain" which was to avoid the greater risk facing him if he went to trial on the sixty-six charges he faced. Ferguson did not move to withdraw the plea either before or after sentencing. SDCL 23A–27–11. Ferguson received a sentence which, by his own computation, allows for parole eligibility in twenty-one years. He will be forty-two years old at that time. As such, a term of years allows for rehabilitation, *see Bult v. Leapley,* 507 N.W.2d 325 (S.D.1993), and allows Ferguson hope. *See State v. Lohnes,* 344 N.W.2d 686 (S.D.1984), Henderson, J., dissenting.

In addition, we note that Ferguson placed himself in a position of trust in relation to the victims and their parents. He betrayed that trust and repeatedly sexually abused eight very young boys, two of whom he continues to deny abusing. As such, his sentence is not so constitutionally offensive as to shock the conscience. *State v. Basker,* 468 N.W.2d 413 (S.D.1991); *State v. Pack,* 516 N.W.2d 665 (S.D.1994).

■ Finally, Ferguson also argues that his sentence is disproportionate. The settled record reflects that Ferguson and his counsel were well aware that the state would be recommending a 200 year sentence. They were also aware that the trial court had an absolute right to accept or reject this recommendation. Notwithstanding this gratuitous disclosure, Ferguson presented no evidence or facts to the trial court at the time of the sentencing hearing or subsequently regarding alleged disproportionality. In light of the settled precedent in this state, this Court has consistently refrained from second guessing the trial court's sentencing decision:

The settled record and sentencing transcript contain no record of information or data regarding proportionality having been presented to the trial court for its consideration when imposing sentence. That being the case, this Court will not accept an invitation to second guess the trial court on its sentence.

*State v. Holloway,* 482 N.W.2d 306, 311 (S.D. 1992).

To assert disproportionality, all trial counsel must, in the words of the old-timers, "root hog, or die!" In other words, counsel must dig, work, sweat, read, study, and produce statistics, criteria, history of cases, studies, court records, etc. *See, Janssen,*

371 N.W.2d at 357. A foundation must be established, at the trial court level, for the appellate advocacy to come.

*State v. Sheridan,* 383 N.W.2d 865, 867 (S.D. 1986), Henderson, J. (specially concurring).

Affirmed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Appellate counsel for Ferguson was also trial counsel. Under SDCL 23A–27–11, counsel was permitted to make a motion to withdraw a plea of guilty before sentence was imposed. Alternatively, counsel could have filed a motion to withdraw a plea of guilty "... to correct manifest injustice ... after sentence ..." Counsel made no such motion. Apparently, the plea bargain was acceptable to Ferguson and to his counsel. Had Ferguson moved to withdraw his guilty plea, the trial court did not have to grant it. It is all within the discretion of the trial court. *State v. Grosh,* 387 N.W.2d 503 (S.D. 1986).

Having accepted the sentence and the dismissal of many counts of sexual abuse of prepubescent boys, Ferguson now comes to the Supreme Court upon an Eighth Amendment argument, namely that he has received unconstitutional punishment. In the appellant's brief, Ferguson's counsel now sets forth, for the first time, studies involving sex offenders within South Dakota which were gathered from the South Dakota Statistical Analysis Center within the Division of Criminal Investigation of the Office of the South Dakota Attorney General. Further, for the first time, again at appellate level, Ferguson presents statutes of adjoining states with lesser penalties for similar offenses. Too late. Said information is not part of the settled record. *State v. Herman,* 253 N.W.2d 454, 457 (S.D.1977). No motion was ever made to the trial court to present any statistics, studies, data, or history of cases, court records or studies which would trigger a shock the conscience or disproportionality review. The tactic of Ferguson and his coun-

sel appears obvious: Take advantage of the plea bargain and later, at the appellate level, try to set aside the sentence as being unconstitutional punishment. The material presented in the brief by way of statistics within the South Dakota Statistical Analysis Center was apparently held as a backup for appellate advocacy. Ferguson cannot have it both ways: First take advantage of the plea bargain and then seek to repudiate it by erupting, for the first time at appellate level, with a host of statutory and sentencing references and statistics.

Compare my dissent in *State v. Pack,* 516 N.W.2d 665 (S.D.1994), where appellant Pack requested a sentencing hearing to produce Unified Judicial System (UJS) sentencing statistics, but could not do so as the UJS would not furnish same without receiving $448.00. Pack was indigent. Compare, also, the special concurrence of this writer in *Bult v. Leapley,* 507 N.W.2d 325, 333 (S.D.1993), where I expressed:

> *Replete is the record below* with exhibits, case history, statistics, and data setting forth twenty defendants who were sentenced to the State Penitentiary in South Dakota for kidnapping. (Emphasis added.)

*See also State v. Castaneira,* 502 N.W.2d 112, 116 (S.D.1993) (Henderson, J., concurring specially). In this case, the record is not "replete" with exhibits, data, case history, statistics and data. Nay, no showing was made whatsoever. And a proportionality analysis was never presented below. *State v. Christians,* 381 N.W.2d 214 (S.D.1986).