1998 SD 98

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lee Iver ANDERSON, Defendant and Appellant.**

**No. 20121.**

Supreme Court of South Dakota.

Considered on Briefs April 29, 1998.

Decided Aug. 19, 1998.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, for plaintiff and appellee.

D. Sonny Walter, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Defendant, Lee Iver Anderson, appeals his life sentence for first degree burglary and lesser prison terms for burglary and three counts of aggravated assault. He also challenges his habitual offender conviction. We affirm all the convictions and find these sentences neither cruel nor unusual.

## FACTS

[¶ 2.] Defendant performed occasional plumbing work on rental properties owned by Elwood Anderson, a retired farmer and insurance agent from Sioux Falls.[1] Elwood sometimes paid defendant in cash from a billfold typically containing two or three hundred dollars in bills. On the night of September 4, 1996, Elwood and his girlfriend, Carol Daniels, went to bed around 10:30. While they were in bed, defendant disconnected Elwood's electricity and entered the residence through a door left open for ventilation. Once in the house, defendant made his way into the bedroom where he crept onto the bed and began stabbing Elwood with a buck knife. As Elwood tried to defend himself, defendant repeatedly stabbed and slashed at him. Defendant also swung his knife at Carol as she tried to defend herself. Defendant then grabbed Carol by the hair, beat her on the head, dragged her out of the bed and threw her onto the floor where he hit and kicked her. After grabbing Carol's hair and repeatedly slamming her head against the side of the waterbed, defendant fled the residence.

[¶ 3.] Both Elwood and Carol were seriously injured during defendant's attack. After defendant's departure, Carol phoned 911 and the police and an ambulance arrived. Elwood was immediately taken to the hospital because he had the most serious injuries. The police questioned Carol who, despite being unable to see the assailant in the dark, immediately identified defendant as a suspect based on her familiarity and prior dealings with him.

[¶ 4.] Subsequent investigation revealed independent evidence of defendant's attack on Elwood and Carol. Defendant was indicted for two counts of first degree burglary and three counts of aggravated assault. Along with the indictment, the State filed a part two habitual offender information alleging defendant had a prior felony conviction for grand theft. Defendant's jury trial was in January 1997 and the jury returned guilty verdicts on all five counts in the indictment. Before trial on the part two information, defendant filed a motion to strike the grand theft conviction from the information. A hearing was held and the trial court took the matter under advisement.

[¶ 5.] The court trial on the part two information was on March 24, 1997. At the close of trial, the court denied the motion to strike and adjudicated defendant a habitual felony offender. Based upon his habitual offender status, defendant was sentenced for his burglary and assault convictions as follows:

Ct. 1 [burglary] Life;

Ct. 2 [burglary] No sentence;

Ct. 3 [assault] Twenty five (25) years, concurrent to Ct. 1;

Ct. 4 [assault] Twenty five (25) years, concurrent to Ct. 1;

Ct. 5 [assault] No sentence[.]

Defendant appeals.

## ISSUE 1

[¶ 6.] **Did the trial court err in denying defendant's motion to strike the grand theft conviction from the part two infor-**

1. There is no indication in the record of any familial relationship between Lee Iver Anderson and Elwood Anderson.

**mation and in adjudicating defendant a habitual offender?**

 "[A] plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in [*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ]—self-incrimination, confrontation and jury trial—and an understanding of the nature and consequences of the plea." *Nachtigall v. Erickson*, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970). Convictions based upon guilty pleas obtained in violation of *Boykin* cannot be used to enhance a sentence under the habitual offender statutes. *State v. King*, 383 N.W.2d 854 (S.D.1986); *Application of Garritsen*, 376 N.W.2d 575 (S.D. 1985).

*State v. Randen*, 497 N.W.2d 107, 108–109 (S.D.1993).

 [¶ 7.] In *Croan v. State*, 295 N.W.2d 728, 729 (S.D.1980), this Court held that for a record to indicate a free and intelligent waiver of the right to jury trial, it must be shown that before pleading guilty the accused was advised of the right to a " 'speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed.' " *Accord State v. Sutton*, 317 N.W.2d 414 (S.D.1982). Defendant argued before the trial court and argues on appeal that the record of his grand theft conviction fails to reflect an adequate advisement of his right to jury trial before entry of his guilty plea. Accordingly, he asserts the conviction is invalid and could not be used to sustain his habitual offender conviction. The argument is meritless.

[¶ 8.] The information charging grand theft alleged defendant committed the offense, "in the county of Minnehaha and State of South Dakota[.]" Defendant's own briefs concede that, before he entered his guilty plea, the trial court twice advised him of his right to jury trial in Minnehaha County. Although the advisements might not have conformed word for word to *Croan's* recitation of the right to a " 'speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed' " (*Croan*, 295 N.W.2d at 730), they did not have to. In *Roseland v. State*, 334 N.W.2d 43, 45 (S.D. 1983), this Court rejected the necessity of such "catechistic incantation[s]." What is important, this Court held, is that the totality of the circumstances clearly show the defendant was aware of and understood these rights at the time of the guilty plea. *Roseland*, 334 N.W.2d at 45. Here, defendant's concession he was twice advised of his right to jury trial in Minnehaha County fulfills this requirement.

 [¶ 9.] Defendant confuses analysis of this issue by referring to questions raised over the propriety of the venue of the grand theft prosecution at the time of that proceeding. He is too late. If there were questions over venue, they should have been raised by an appropriate pretrial motion or at the close of the State's evidence during a trial. *See e.g. State v. Haase*, 446 N.W.2d 62, 65 (S.D. 1989). They were not. Instead, defendant simply entered a guilty plea. A guilty plea waives nonjurisdictional defects in a prior proceeding. *Two Eagle v. Leapley*, 522 N.W.2d 765, 768 (S.D.1994). Improper venue is a nonjurisdictional defect subject to waiver. *Haase, supra*. Accordingly, any issue over the propriety of venue of the grand theft prosecution was waived with the entry of defendant's guilty plea.[2]

[¶ 10.] Based on the foregoing, the trial court did not err in denying defendant's motion to strike the grand theft conviction from the part two information and in adjudicating

---

2. The concurrence in result correctly points out the right to be advised of the right to trial by jury in the county where the offense is alleged to have been committed cannot be waived with a guilty plea. We do not disagree or hold otherwise. However, the defendant's argument that he was inadequately advised of his right when he pled guilty to grand theft is premised upon questions he now raises over the propriety of the venue of that prosecution in Minnehaha County. Essen-

tially the defendant asserts he should have been advised of a right to trial by jury in the county where the record showed the offense may have occurred rather than in Minnehaha County where the information alleged the offense occurred. We merely point out that any contentions the defendant might now have over improper venue of the grand theft prosecution were waived with the entry of his guilty plea to that offense. *Two Eagle, supra; Haase, supra*.

defendant a habitual felony offender on the basis of that conviction.

## ISSUE 2

[¶ 11.] **Is defendant's life sentence for first degree burglary cruel and unusual punishment?**

■ [¶ 12.] Defendant argues his life sentence for first degree burglary is cruel and unusual punishment. In *State v. Bonner*, 1998 SD 30, ¶ 17, 577 N.W.2d 575, 580 this Court held:

> [T]o assess a challenge to proportionality we first determine whether the sentence appears grossly disproportionate. *To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends.* If, on the other hand, the sentence appears grossly disproportionate, we may, in addition to examining the other Solem factors, conduct an intra- and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense. (emphasis added)

[¶ 13.] Here, the trial court was well aware of the conduct involved with defendant's burglary and with his relevant past conduct by the time of its imposition of sentence. During trial, the court heard testimony regarding defendant's invasion of the home of two vulnerable and unsuspecting victims in the midst of the night and his vicious and savage attack on them with a seven inch buck knife. Based upon testimony concerning defendant's possession of the knife and his disconnection of Elwood's electricity, the trial court could only conclude defendant conceived the burglary and attack in advance and carried out his nefarious mission according to plan. Further, the trial court heard testimony regarding the severe injuries sustained by the victims as a result of the attack: Elwood to his chest, abdomen and neck; and, Carol, to her hand. Elwood himself testified at the sentencing hearing that he suffered severe pain and mental distress as a result of the attack and concluded that, "I won't ever walk very good. I can't talk too good. It's been pretty tough and that's why I feel that he should get the maximum penalty." Carol joined with this recommendation, stating, "this man destroyed our lives. I remember recently Elwood said to me, no man has ever lived that has suffered like I have. I am scared of this man. He is dangerous. He's violent. And he has put a big cloud over our lives."

[¶ 14.] Reflecting on this testimony at sentencing, the trial court discussed the heinous nature of defendant's crimes, Elwood's grave injuries in defendant's attack and defendant's past conduct and record of violence. In that regard, the trial court observed:

> Going back a number of years from your rap sheet, the first offense is approximately 1978 where I think you were 12 years old, to what, as far as I can determine, is your first felony which was a rape in Georgia when you were in the military to the grand theft and now ending with the crimes that bring you here where you're sitting in front of me.

[¶ 15.] The record supports the trial court's observations about defendant's prior conduct. A presentence report recites defendant's substantial juvenile record consisting of a vandalism, three burglaries, two auto thefts and two other thefts. It further indicates he was placed in the State Training School in Plankinton when he was fifteen and entered the Army when he was seventeen or eighteen. Defendant was still in the military when he was convicted for a rape in Georgia in 1986. Defendant spent about three years in the penitentiary and was released on parole to South Dakota in 1988. Defendant was still on parole for the rape offense when he committed grand theft in 1989.

[¶ 16.] Reviewing the relevant sentencing statutes, it is clear the Legislature views first degree burglary as a most severe offense and any felony offense committed by an individual with a record of felony criminal conduct as a matter of grave concern. Normally, the maximum sentence for first degree burglary is twenty-five years in the penitentiary and a

fine of twenty-five thousand dollars. SDCL 22–32–1; 22–6–1(4). However, habitual felony offender status elevates the maximum sentence to life imprisonment and twenty-five thousand dollars. SDCL 22–7–7; 22–6–1(3).

[¶ 17.] Giving the utmost deference to the Legislature's sentencing scheme and to the sentencing court and based upon the heinous and abhorrent nature of the burglary carried out by defendant as well as his substantial record of past criminal conduct and conduct of a violent nature, defendant's life sentence for first degree burglary is not grossly disproportionate to the severity of his crime. Accordingly, further review of this claim is unwarranted. *Bonner, supra.*

[¶ 18.] Defendant also contends his sentence is cruel and unusual because the trial court failed to consider rehabilitation as a factor in imposing sentence. This is inaccurate. In imposing sentence, the trial court stated that defendant is an "extreme danger" to society and that there is, "no reason to believe that that will ever change." Given the conduct involved with defendant's burglary, his past criminal conduct and the absence of expert testimony defendant *was* capable of rehabilitation, the trial court did not err in this determination. *See State v. Ramos,* 1996 SD 37, ¶ 19, 545 N.W.2d 817, 821–22.

[¶ 19.] Affirmed.

[¶ 20.] MILLER, C.J. and GILBERTSON, J., concur.

[¶ 21.] SABERS, J., concurs in result.

[¶ 22.] AMUNDSON, J., having deemed himself disqualified, did not participate.

SABERS, Justice (concurring in result).

[¶ 23.] I concur in Issue 2 but concur in result only in Issue 1 for the following reasons.

[¶ 24.] There was no defect during the proceeding in which Anderson entered his guilty plea. The trial court properly advised Anderson of his constitutional right to "a speedy public trial by an impartial jury of the county or district in which the offense is *alleged* to have been committed." SDConst art. VI, § 7 (emphasis added); *Croan v.*

*State,* 295 N.W.2d 728, 729–30 (S.D.1980). The State alleged that the grand theft charge to which Anderson pled guilty transpired, in part, in Minnehaha County. Anderson was advised that he had a right to jury trial in Minnehaha County. For plea purposes, it is only necessary for the State to *allege* the county where the crime transpired, not to *prove* that it was the only county. Therefore, the use of this conviction to enhance his sentence as a habitual offender was proper.

[¶ 25.] Under *Croan, supra* and *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the right to be advised of the constitutional right to a jury trial in the county in which the offense was alleged to have been committed *cannot* be waived by virtue of a guilty plea. Therefore, this case does not present a waiver issue as indicated *supra* ¶ 9. Since there was no defect in the plea proceedings, we can and should affirm on the merits.