Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596
HTML Code Â© State Bar of South Dakota, 1999
STEVEN GANRUDE,
Petitioner and Appellant,
v.
DOUGLAS WEBER,
Warden, South Dakota State Penitentiary,
Appellee.
[2000 SD 96]
South Dakota Supreme Court
Appeal from the Third Judicial Circuit, Beadle County, SD
Hon. Ronald K. Roehr, Judge
#21194--Affirmed
Steven R. Binger, Sioux Falls, SD
Attorney for Petitioner and Appellant.
Mark Barnett, Attorney General
Sherri Sundem Wald, Assistant Attorney General, Pierre, SD
Attorneys for Appellee.
Considered on Briefs Apr 24, 2000; Opinion Filed Jul 19, 2000
MILLER, Chief Justice.
[Â¶1] Steven Alan Ganrude appeals the denial of his application for writ of habeas corpus. He claims the habeas court erred in denying his motion for discovery of information regarding sentences imposed for similar offenses and that his life sentence for aggravated assault enhanced by his habitual offender status violates the Eighth Amendment. We affirm.

FACTS AND PROCEDURE

[Â¶2] The criminal activities which led to Ganrude's conviction and life sentence took place at the 1991 South Dakota State Fair and are detailed in this Court's unanimous affirmance on direct appeal. State v. Ganrude, 499 NW2d 608 (SD 1993). Briefly, the facts are that Ganrude and several companions forced 17-year-old Ryan Bowar to endure four to five hours of terror and humiliation at knifepoint. Bowar reported the incident to law enforcement despite Ganrude's threats to kill Bowar's family and rape and kill his sister if he did. Ganrude was found guilty of aggravated assault and was adjudicated a habitual offender. He received a life sentence.
[Â¶3] After we affirmed the judgment of conviction on direct appeal, Ganrude filed an application for habeas corpus, claiming his life sentence violated the Eighth Amendment's protection against cruel and unusual punishment. Following a hearing, his application was denied.
[Â¶4] Ganrude raises two issues in this habeas appeal:


1. Whether the habeas court erred in denying Ganrude's motion for discovery of information regarding sentences imposed for similar crimes.
2. Whether Ganrude's life sentence violates the Eighth Amendment's protection against cruel and unusual punishment.

ANALYSIS AND DECISION

[Â¶5] 1.The habeas court did not err in denying Ganrude's motion for discovery of information regarding sentences imposed for similar crimes.
[Â¶6] The habeas court cited State v. Bonner, 1998 SD 30, 577 NW2d 575 as supporting authority for denying Ganrude's discovery motion. In Bonner, we stated:


In summary, to assess a challenge to proportionality we first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends. If, on the other hand, the sentence appears grossly disproportionate, we may, in addition to examining the other Solem factors, conduct an intra- and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.
Id. at Â¶17, 577 NW2d at 580 (emphasis added). The habeas court informed Ganrude that if it ruled in his favor on the first prong of Bonner, the grossly disproportionate portion of his Eighth Amendment claim, it would then address the second prong regarding sentencing comparisons. Following a hearing, the court ruled against Ganrude on the first prong and denied his motion for discovery of information relevant to the comparative analysis.
[Â¶7] Ganrude claims Bonner applies only to review on direct appeal of sentences and does not bar a habeas petitioner from pursuing discovery to show disproportionality. However, the rule of Bonner applies to an Eighth Amendment challenge, regardless of whether the challenge is brought on direct appeal or in a habeas action. The "shock the conscience" test that Bonner, 1998 SD 30 at Â¶13, 577 NW2d at 579, replaced for federal constitutional analysis has been applied in both types of actions to Eighth Amendment challenges. Compare State v. Raymond, 1997 SD 59, 563 NW2d 823 with Bult v. Leapley, 507 NW2d 325 (SD 1993). The habeas court did not err in denying Ganrude's motion for discovery of materials relevant to the second prong of Bonner when it had ruled against his claim on the first prong.
[Â¶8] 2. Ganrude's life sentence does not violate the Eighth Amendment's protection against cruel and unusual punishment.
[Â¶9] "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather it forbids only extreme sentences that are 'grossly disproportionate to the crime.'" Bonner, 1998 SD 30, Â¶15, 577 NW2d at 579 (citing Harmelin v. Michigan, 501 US 957, 1001, 111 SCt 2680, 2705, 115 LEd2d 836, 869 (1991) (Kennedy, J., concurring). We determine whether a sentence is grossly disproportionate to the crime by considering the conduct involved and any relevant past conduct, with utmost deference to the sentencing court and to the legislature. Bonner, supra. We have also stated that life sentences:


'are rare and should involve a history of much more serious offenses that by reason of their brutality or calculated destructiveness render irrelevant the goal of rehabilitation and require in vindication of public safety and the moral underpinnings of the criminal law that the offender forfeit his right to ever again be set free ... .'
Bult, 507 NW2d at 327 (quoting State v. Weiker, 342 NW2d 7, 12 (SD 1983)).
[Â¶10] The maximum sentence for aggravated assault, a Class 3 felony, is 15 years imprisonment and may include a fine of $15,000.00. SDCL 22-18-1.1; 22-6-1(5). Further, SDCL 22-7-8 mandates that if a defendant has been convicted of three or more additional felonies, with one or more of them being crimes of violence, the sentence for the principal felony is enhanced to that of a Class 1 felony, which carries a maximum sentence of life imprisonment. When Ganrude was sentenced for the aggravated assault of Ryan Bowar, he had a significant criminal history of eight prior felony convictions, including five separate burglaries, two of which are considered violent crimes under South Dakota criminal statutes. (fn1) 
[Â¶11] The record shows Ganrude was 30 years old when he committed this aggravated assault. He had previously been incarcerated in Minnesota county jails as well as in Minnesota state correctional facilities. He held a G.E.D. completed while in prison. The record showed no evidence of steady employment. By his own account, he had no family. As observed by the sentencing court, he had a career in crime. His 1986 burglary conviction resulted in the following comments by a corrections officer on his presentence investigation report: "[Ganrude has] an ongoing history of self-destructive antisocial behavior. He had considerable difficulty as a juvenile and he has been locked up almost constantly since becoming an adult. He is currently looking at his third period of incarceration in a prison setting and he is not yet 25 years old." Ganrude admitted at the habeas hearing that in the 12 years between ages 18 and 30, he spent 6-8 years in prison and during his 4-6 years of freedom, he committed eight felonies, excluding the aggravated assault on Bowar.
[Â¶12] The sentencing court also took into account Ganrude's written statements to the court concerning the crime and the victim impact statements of the minor victim and his family. Ganrude's comments showed no remorse. He considered himself a victim and questioned why he was being "crucified" by Beadle County. Meanwhile, 17-year-old Bowar was nervous, had headaches and nightmares, had difficulty sleeping, had dropped out of school and lost interest in work, was insulting to people, was afraid to be alone and had no friends. Bowar spoke with his pastor every other day but had not received additional counseling because of the cost. Bowar reported he felt Ganrude represented a continued threat to him as soon as he is released from prison. Bowar's father stated he feared Ganrude would make good on his threats to kill the Bowar family when he is released from prison. (fn2)  This report was completed 7Â½ months after the crime, indicating it had great impact still on the victim and his family.
[Â¶13] On appeal, Ganrude admits his acts were offensive but claims they were not sufficiently serious to warrant a life sentence. This argument ignores his habitual offender status that enhanced his sentence for aggravated assault to a life sentence. (fn3)  He also claims he served his time for those prior felonies and should not be punished again. Although this argument is not developed beyond this bare claim, we have previously held that this state's habitual offender statutes do not violate a defendant's right against double jeopardy. State v. Nilson, 364 NW2d 532, 533 (SD 1985) (quoting Gryger v. Burke, 334 US 728, 732, 68 SCt 1256, 1258, 92 LEd 1683, 1687 (1948)). Any argument on the efficacy of the habitual offender statutory scheme is more properly addressed to the legislature rather than to the courts.
[Â¶14] In assessing whether Ganrude's life sentence is grossly disproportionate to the crime, we consider "the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court." Bonner, supra. Here, relevant past conduct shows a significant criminal history of eight prior felonies, including crimes of violence. SDCL 22-7-8 mandated that Ganrude's sentence for aggravated assault be enhanced to a maximum sentence of life imprisonment. His lack of remorse and failure (even now) to acknowledge the seriousness of his conduct are also to be considered.
[Â¶15] The sentencing court noted Ganrude is a "career criminal" who trivializes his past criminal conduct. This observation continued to ring true at the habeas hearing. Ganrude has a history of disregard for the law. He has ignored the warnings of his previous felony convictions. State v. Anderson, 1998 SD 98, Â¶18, 583 NW2d 151, 155. A life sentence, under this record, is not grossly disproportionate and presents no Eighth Amendment violation. We affirm. (fn4) 
[Â¶16] SABERS, KONENKAMP, and GILBERTSON, Justices, concur.
[Â¶17] AMUNDSON, Justice, dissents.
AMUNDSON, Justice (dissenting).
[Â¶18] As I have traveled along the path of sentencing review, I have encountered numerous sentences that have struck me as excessive. In reviewing the ten pages or more of the sentencing transcript in this case and other information in the record, this sentence, after an objective review, certainly, in my mind, constitutes cruel and unusual punishment no matter how you look at it. What is "cruel and usual punishment" has never been precisely defined. In Trop v. Dulles, 356 US 86, 99-101, 78 SCt 590, 597-98, 2 LEd2d 630, 642 (1958), Justice Earl Warren of the United States Supreme Court stated,


[t]he exact scope of the constitutional phrase "cruel and unusual" has not been detailed by this Court. ... The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards. ... The Court [has] recognized ... that the words of the Amendment are not precise, and that their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.
[Â¶19] In concluding that this sentence is disproportionate to the crime committed, I can not erase from my mind other appeals that have come before this Court, such as the following cases.
[Â¶20] In State v. Bonner, 1998 SD 30, 577 NW2d 575, Bonner was accused of breaking into a lock box at a party, stealing necklaces, a watch and several two dollar bills and engaging in sexual acts with several minor girls. Bonner, who was charged with third degree rape and second degree burglary, was sentenced to the maximum punishment of two consecutive fifteen year prison terms. Bonner had no prior felony record and only a few lesser misdemeanors. On appeal, this Court held that the fifteen year sentence for burglary was grossly out of proportion to the severity of the crime.
[Â¶21] In State v. Lemley, 1996 SD 91, 552 NW2d 409, Lemley strangled a man after Lemley's friend McClanahan beat him up. Both men left with the deceased's wallet and car and fled to Sioux Falls. Lemley had a learning disability, a tenth grade education, a third grade reading level, math skills of a sixth grader and an inability to express himself in writing. Lemley was ultimately charged with first degree manslaughter after the murder and burglary charges were dismissed and was sentenced to 350 years in the South Dakota penitentiary. On appeal, we held that Lemley failed to establish that 350 years shocked the conscience of men generally because Lemley was eligible for parole on August 15, 2038 (age 64) and good time release on December 30, 2170. This Court further noted that "the sentencing court imposed a term of years rather than a life sentence to give Lemley an opportunity to rehabilitate himself. '[A] term of years allows for rehabilitation and allows [the defendant] hope.'" Id. at Â¶15, 552 NW2d at 413 (quoting State v. Ferguson, 519 NW2d 50, 54 (SD 1994)).
[Â¶22] In State v. Henjum, 1996 SD 7, 542 NW2d 760, Henjum was charged with first degree murder, second degree murder and manslaughter for shooting and killing his roommate. After pleading guilty to first degree manslaughter, Henjum was sentenced to forty-five years in the South Dakota State Penitentiary. On appeal, this Court opined that Henjum's sentence did not amount to cruel and unusual punishment.
[Â¶23] In State v. Chase in Winter, 534 NW2d 350 (SD 1995), Chase in Winter took his 11 year old male cousin hostage at knife point and did many deplorable acts to him. Chase in Winter had been arrested eight prior times on juvenile delinquency charges, assault and battery, and tribal pickup orders. He ultimately pled guilty but mentally ill to kidnapping and aggravated assault. He was sentenced to 200 years for kidnapping and a concurrent fifteen years for aggravated assault. On appeal, this Court held that Chase in Winter's sentence did not shock the conscience. We further held that while he was a "young first time felon", he had had an extensive juvenile record whereby he had committed crimes which mirrored the crimes for which he was presently convicted. He pled guilty to avoid a possible life without parole sentence and received instead an opportunity for rehabilitation, therapy and parole eligibility at the age of forty-six.
[Â¶24] In State v. Cragoe, 514 NW2d 396 (SD 1994), Cragoe had committed numerous sexual contact offenses. While on probation for those offenses, he babysat for a five and eight year-old girl and sexually molested them. Cragoe was charged with six counts of first degree rape and four counts of sexual contact with a child under age sixteen. Cragoe was sentenced to concurrent 99 year penitentiary terms with thirty-four years conditionally suspended on each sentence. He would be eligible for parole in ten years. This Court noted on appeal that Cragoe began molesting children at age fifteen and was twenty at the time of this sentencing. Further, based upon the gravity of offenses and his lack of remorse, the sentence did not shock the conscience or was so disproportionate to the crime to violate the Eighth Amendment.
[Â¶25] In Ferguson, 519 NW2d 50, a karate instructor and volunteer in big brother/big sister developed relationships with eight young boys, ranging from ages eight to thirteen, who he later molested. Ferguson was charged with one count of rape and seven counts of contact with a minor. Ferguson was sentenced to 180 years in the penitentiary for rape. Ninety years of his sentence was conditionally suspended and an additional fifteen years was imposed for sexual contact with minors. The sentences were ordered to be served concurrently. We held on appeal that Ferguson's sentence did not shock the conscience because he had pled guilty to avoid a life sentence without parole. Further, he had placed himself in a position of trust with the victims and then repeatedly sexually abused them.
[Â¶26] Finally, in State v. Holloway, 482 NW2d 306 (SD 1992), Holloway had drunken confrontation with a man in an alley which led to the stabbing death of the man. Holloway then took the man's wallet and other property. Holloway was charged with first degree manslaughter and robbery and was sentenced to 121 years for manslaughter and twenty-five years for robbery, to be served consecutively for a total sentence of 146 years. This Court held on appeal that Holloway's sentence did not shock the conscience because the sentence was well within the statutory limits and he could have received a life sentence without parole. Further, because he received a sentence for a term of years, he would be eligible for parole.
[Â¶27] When imposing sentences after a plea or conviction, the court is required to draw a line to determine what the proper term would be and not whether or not imprisonment should be ordered. Under our pre-Bonner jurisprudence in Henjum, we have held that when deciding a case under the old "shock the conscious" test, our Legislature determines the range of sentences, but where it has provided broad sentencing authority that "suggests that a term less than a life sentence[,] [it] would be unlikely so shock the conscience of humankind." See Henjum, 1996 SD 7, Â¶8, 542 NW2d at 762. Even under our new "grossly disproportionate" rule, a sentence of less than mandatory life is not likely to shock any jurist.
[Â¶28] In the case of Harmelin v. Michigan, 501 US 957, 1014-15, 111 SCt 2680, 2712, 115 LEd2d 836, 878 (1991), the United States Supreme Court, when ruling on an Eighth Amendment issue, stated:


"[T]his Court has 'not confined the prohibition embodied in the Eighth Amendment to "barbarous" methods that were generally outlawed in the 18th century,' but instead has interpreted the Amendment 'in a flexible and dynamic manner.'" In so doing, the Court has borne in mind Justice McKenna's admonition in Weems v. United States, [217 US 349, 373, 30 SCt 544, 551, 54 LEd 793, 801], that "[t]ime works changes, brings into existence new conditions and purposes. Therefore a principle to be vital must be capable of wider application than the mischief which gave it birth. This is peculiarly true of constitutions." [citations omitted.]
[Â¶29] In this case, the finality of this life sentence, the other decisions involving lesser sentences for less severe or as severe offenses and the constitutional restriction against cruel and unusual punishment lead this writer to only one conclusion. "[A] life sentence was just that, a life sentence[.]" See Brim v. South Dakota Bd. of Pardons & Paroles, 1997 SD 48, Â¶19, 563 NW2d 812, 817. This life sentence without parole clearly constitutes cruel and unusual punishment. The only medicine to help in changing or rehabilitating any individual seems to be the "hope" that he or she can again obtain their freedom by amending their attitude and ways. There should generally be a light at the end of the tunnel for any human no matter how bad he appears or how bad his past conduct reflects he is. Mr. Ganrude, when reviewing this record, has done very little to convince a court that he is remorseful, sorry, or accepts the consequences of his deplorable conduct in this case. While he was not the only individual involved in commission of the deplorable acts for which he was charged, he certainly will be the only when spending the rest of his life incarcerated. It seems as though the result of this sentence is to cast this individual into the human waste dump and let him languish there until he finally totally decomposes and has gasped his last breath. I cannot agree that this should be the severity of the sentence and would hold that a light should remain on at the end of the tunnel for this individual.
[Â¶30] I would reverse and remand for resentencing proceedings. 
Footnotes
1.  A "crime of violence" is defined by SDCL 22-1-2(9) as one of the crimes enumerated therein, including burglary, where "the perpetrator used force, or was armed with a dangerous weapon, or used any explosive or destructive device." In 1979, Ganrude struck a man in the head with a tire iron and stole his wallet. He used the tire iron the previous day to break into a towing company to steal money. In 1986, Ganrude used a knife to attempt entry into two businesses in an industrial park area. 
2.  Ganrude also threatened to kill the prosecutor after he heard his life sentence pronounced. His comments were recorded on the sentencing hearing transcript: "You better hope I never get out 'cuz I'm gonna kill ya, bitch." As noted, this comment was made after sentencing and did not therefore influence the court in determining Granrude's life sentence. 
3.  The dissent also ignores Ganrude's habitual offender status in that none of the seven cases analyzed for comparison to Ganrude's involved a defendant with any prior adult felony record, much less a habitual offender with eight prior felony convictions. 
4.  We do not address Ganrude's claim that the sentencing court failed to consider his potential for rehabilitation. "Upon review we will address this subject only if we initially determine there is a gross disproportionality in the sentence." State v. Milk, 2000 SD 28, Â¶18, 607 NW2d 14, 20 (citing Bonner, 1998 SD 30, Â¶17, 577 NW2d at 580).