[¶ 66.] SABERS, Justice
(dissenting).
[¶ 67.] This fifty-year-old man received a sentence of 175 years. This sentence constitutes six life sentences when considering Buchhold’s age and statistical life expectancy. Even if we consider Buchhold will be eligible for parole in half time served, this sentence effectively amounts to three life sentences.[7] Sentencing him to “de facto” life sentences “eliminates forever any opportunity for hope, self-improvement, and rehabilitation.” State v. Pasek, 2004 SD 132, ¶ 43, 691 N.W.2d 301, 313 (Sabers, J., dissenting). This sentence is harsh, excessive, grossly disproportionate and wasteful. All this sentence guarantees is that Buchhold will be housed, fed, medically treated and buried at the State’s expense when he dies in the South Dakota State Penitentiary. I dissent because we should remand this case to impose a “meaningful less than life sentence.” Id. ¶ 49.
[¶ 68.] 1. De facto life sentences
[¶ 69.] There must be some hope of rehabilitation. While I do not condone Buchhold’s actions, nor minimize their magnitude, some hope should exist in sentencing.
A life sentence should only be imposed when a trial court “can determine from the facts of the principal offense and the previous convictions that rehabilitation is so unlikely as to be removed from consideration in sentencing; that the interests of society demand that the convict be kept off the streets for the rest of his life.... ”
Id. ¶ 44 (quoting State v. Pulfrey, 1996 SD 54, ¶ 18, 548 N.W.2d 34, 38). Ultimately, we must keep the goals of sentencing in mind and hold firmly to the ideal that a sentence cannot “constitute excessive retribution.” Id. Buchhold has received three life sentences based on his present age and his average life expectancy. He will not be eligible for parole for 87 and ½ years.
[¶ 70.] Even the majority opinion points out the “statutory sentencing structure established for these crimes can reasonably be construed to further the State’s public policy of deterrence through correction and retribution.” Supra ¶ 37 (emphasis added) (citing Ewing v. California, 538 U.S. 11, 28, 123 S.Ct. 1179, 1189, 155 L.Ed.2d 108 (2003); Harmelin v. Michigan, 501 U.S. 957, 1003, 111 S.Ct. 2680, 2706, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). Giving a fifty-year-old man a 175-year sentence cannot further the State’s policy of deterrence through correction. Leaving Buchhold in the penitentiary without the possibility of parole will never provide correction. It constitutes excessive retribution.
[¶ 71.] Buchhold’s criminal record reveals no prior instances or allegations of sexual misconduct. “[T]he lack of a prior felony conviction or other serious offense aids our decision and ‘certainly bears on the question of gross disproportionality.’ ” State v. Blair, 2006 SD 75, ¶ 96, 721 N.W.2d 55, 79 (Sabers, J., dissenting) (quoting State v. Bonner, 1998 SD 30, ¶ 23, 577 N.W.2d 575, 581-82). His presentence report indicated he still maintains his innocence[8] and recommends he be sentenced *831 “for a substantial period of time.” However, his sentence of 175 years is much longer than “a substantial period of time.” It is effectively three life sentences without the possibility of parole and constitutes excessive retribution. This is the type of excessive punishment that “generate[s] disrespect for the law.” Id. ¶ 82, (Konen-kamp, J., concurring in result).
[¶ 72.] In sentencing, the court should “examine a defendant’s ‘general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.’ The sentencing court should also consider rehabilitation prospects.” State v. Lemley, 1996 SD 91, ¶ 12, 552 N.W.2d 409, 412 (internal citations omitted). What rehabilitation prospects can a man have when there is no incentive to rehabilitate? “There should generally be a light at the end of the tunnel for any human no matter how bad he appears or how bad his past conduct reflects he is.” Ganrude v. Weber, 2000 SD 96, ¶ 29, 614 N.W.2d 807, 813 (Amundson, J., dissenting). We should impose a meaningful sentence of less than life to keep that light on and the hope going.
[¶ 73.] As Justice Amundson stated,
It seems as though the result of this sentence is to cast this individual into the human waste dump and let him languish there until he finally totally decomposes and has gasped his last breath. I cannot agree that this should be the severity of the sentence and would hold that a light should remain on at the end of the tunnel for this individual.
Id. Again, I do not condone Buchhold’s actions, but I cannot condemn him to a life without hope. For this reason, we should vacate these “de facto” life sentences and remand to require the judge to impose a sentence that does not last long beyond the time Buchhold has “gasped his last breath.”
[¶ 74.] 2. Gross Disproportionality
[¶ 75.] I also disagree with the majority opinion’s gross disproportionality analysis. When conducting gross disproportion-ality review, the review should entail the aggregate sentence, not the individual sentence on each count. The majority opinion appears to adopt the position advanced in the Blair concurrence as the method to conduct a gross disproportionality review when the defendant received consecutive sentences. 2006 SD 75, ¶ 73, 721 N.W.2d at 73 (Konenkamp, J., concurring in result). Utilization of this method creates a situation where no sentence could really ever appear to be grossly disproportionate. I reiterate the position advanced in the Blair dissent, “[w]hether we measure one grain of sand or one tree at a time, a desert remains a desert and a forest remains a forest.” Id. ¶ 109 n. 33 (Sabers, J., dissenting). Even the Blair concurrence concedes there may be a time when the sentences should be reviewed in the aggregate, as opposed to individually. Id. ¶ 78 n. 22 (Konenkamp, J., concurring in result). Specifically, the Blair concurrence provided it may be appropriate to view the sentences in the aggregate when *832 the “consecutive sentences amount[] to life in prison.” Id. This is the type of sentence that should be reviewed in the aggregate. Buchhold received ten fifteen-year sentences and one twenty-five year sentence, all to be served consecutively. This amounts to a 175-year sentence, which is effectively three life sentences without the possibility of parole.[9]
[¶ 76.] Looking at each individual count shows Buchhold received sentences each within the statutory maximum. While this might be initially reassuring, it demonstrates a concern when reviewing the counts in isolation. The problem is that the statutes do not allow a life sentence for Buchhold’s charged crimes.[10] The most severe crime he was charged and convicted of is second degree rape, which is a Class 2 felony punishable by twenty-five years in the state penitentiary. Examining the counts in isolation, rather in the aggregate, results in Buchhold receiving a sentence that the statute did not initially allow. Conducting proportionality review in this manner encourages prosecutors to charge as many counts as possible to ensure a higher sentence that will not appear grossly disproportionate. That violates the spirit of Bonner and the law of the State of South Dakota. See Blair, 2006 SD 75, ¶ 109, 721 N.W.2d at 82 n. 33 (noting “the words ‘Equal Justice Under Law’ call for more than just a lofty inscription”) (Sabers, J., dissenting) (citing Bonner, 1998 SD 30, ¶ 12, 577 N.W.2d at 578). All this sentence guarantees is that Buchhold will be housed, fed, medically treated and buried at the State’s expense when he dies in the South Dakota State Penitentiary.

. See supra ¶ 28.

. When reading the sentencing transcript, it appears that Buchhold’s maintained innocence weighed heavily in the court's conclusion that Buchhold was not a candidate for rehabilitation and its decision to sentence him *831 to 175 years. The trial judge specifically quoted Dr. Gans who explained he had specific recommendations to treat Buchhold, "[i]f and when Ralph becomes amenable to treatment through the relinquishment of denial.” The majority opinion points out Buchhold is in "deep denial” and not amenable “to treatment or the possibility of rehabilitation.” Supra ¶ 34-35. Buchhold may never relinquish denial. However, that should be the basis of denying parole. It should not be the basis to deny him even the opportunity for parole. Buchhold at some point may atone for his crimes and may be rehabilitated. Without even a chance of parole, it leaves Buchhold without a chance of ever having hope of rehabilitating.

. Buchhold was fifty-years old when he was sentenced. He will not be eligible for parole for 87 and ½ years. Whether we view the 175-year sentence as six or three life sentences is irrelevant. By the time Buchhold is eligible for parole, he will be dead or 137 and ½ years old.

. SDCL 22-6-1 provides, in relevant part:
Except as otherwise provided by law, felonies are divided into the following nine classes which are distinguished from each other by the following maximum penalties which are authorized upon conviction:
(1)Class A felony: death or life imprisonment in the state penitentiary. A lesser sentence than death or life imprisonment may not be given for a Class A felony. In addition, a fine of fifty thousand dollars may be imposed; (2) Class B felony: life imprisonment in the state penitentiary. A lesser sentence may not be given for a Class B felony. In addition, a fine of fifty thousand dollars may be imposed;
(3) Class C felony: life imprisonment in the state penitentiary. In addition, a fine of fifty thousand dollars may be imposed;
(4) Class 1 felony: fifty years imprisonment in the state penitentiary. In addition, a fine of fifty thousand dollars may be imposed;
(5) Class 2 felony: twenty-five years imprisonment in the state penitentiary. In addition, a fine of fifty thousand dollars may be imposed;
(6) Class 3 felony: fifteen years imprisonment in the state penitentiary. In addition, a fine of thirty thousand dollars may be imposed[J